[No. F014575. Fifth Dist. Jan. 7 1992.]

PHILLIP D. BERTELSEN, INC., Petitioner, v.
AGRICULTURAL LABOR RELATIONS BOARD, Respondent;
UNITED FARM WORKERS OF AMERICA, AFL-CIO et al., Real Parties
in Interest.

COUNSEL

Marrs & Robbins and William S. Marrs for Petitioner.

Fred A. Slimp II and Michael D. Stump for Respondent.

No appearance for Real Parties in Interest.

OPINION

**VARTABEDIAN, J.**—During 1984 and 1985, petitioner Phillip D. Bertelsen, Inc. (hereinafter Bertelsen), discharged employee Maximino Cerna, a Mexican national, and 13 Salvadoran employees. In February 1986, an administrative law judge ruled that all 14 employees had been discharged in retaliation for engaging in protected concerted activity, and ordered Bertelsen to offer reinstatement. The administrative law judge also ordered Bertelsen to make the 14 employees whole "for all losses of pay and other economic losses they have suffered as a result of the discrimination against them." The Agricultural Labor Relations Board (hereinafter the board) expressly adopted the administrative law judge's order. (*Phillip D. Bertelsen* (1986) 12 ALRB No. 27.)

Bertelsen offered reinstatement to all 14. Cerna did not respond to the reinstatement offer. The other 13 employees attempted to accept the Bertelsen offer and reported to the Bertelsen office on March 24, 1986. They were told by a Bertelsen supervisor, however, that they would not be allowed to work unless they produced documentary evidence that they were legally authorized to work in the United States. At that time, 29 United States Code section 1816 (a part of the Migrant and Seasonal Agricultural Worker Protection Act [referred to in the record as MSPA])[1] provided:

"(a) Prohibitions on farm labor contractor

"No farm labor contractor shall recruit, hire, employ, or use, with knowledge, the services of any individual who is an alien not lawfully admitted for

---

[1] 29 United States Code section 1816 has since been repealed, effective June 1, 1987.

permanent residence or who has not been authorized by the Attorney General to accept employment.

"(b) Compliance by farm labor contractor

"A farm labor contractor shall be considered to have complied with subsection (a) of this section if the farm labor contractor demonstrates that the farm labor contractor relied in good faith on documentation prescribed by the Secretary, and the farm labor contractor had no reason to believe the individual was an alien referred to in subsection (a) of this section."

The 13 employees seeking reinstatement presented papers to Bertelsen supervisor John Curiel by March 29, 1986. Each one's papers consisted of either (a) a letter from the United States Department of Justice, Immigration and Naturalization Service (INS) acknowledging that a petition for asylum had been filed, or (b) an INS form I-94 acknowledging that a petition for asylum was pending. The letters stated that "[y]ou are permitted to remain in the United States while your application is pending and until a final decision has been made." The I-94 forms authorized the named person to stay in the United States temporarily. The reinstatement applicants were informed by supervisor Curiel that they would not be hired because their documents were not stamped "work authorized." None were rehired.

The 13 individuals eventually received temporary resident status under applicable provisions of the Immigration Reform and Control Act of 1986 (see Pub.L. No. 99-603 (Nov. 6, 1986) 100 Stat. 3359, & 29 U.S.C. § 1255a). On June 1, 1987, Bertelsen made another offer of reinstatement to them. All parties agree that this offer was sufficient to terminate Bertelsen's continuing liability for backpay to these 13.

However, Bertelsen and the board's general counsel failed to agree on the appropriate amount of backpay to be awarded to the 14 discharged employees. The general counsel advised Bertelsen that Bertelsen owed backpay for the 13 employees discharged in February of 1985 for the period from February of 1985 to the June 1, 1987, offers of reinstatement. For employee Cerna, the general counsel calculated the backpay period to be from the August 1984 discharge to April 1986, when Cerna failed to respond to Bertelsen's offer of reinstatement. The general counsel calculated the appropriate backpay awards as ranging from a low of $3,121.42 to a high of $6,330.72, and totaling $60,148.03.

Bertelsen answered the general counsel's backpay specification by denying that it owed any backpay and requesting that the backpay specification

be dismissed in its entirety. Bertelsen set forth the affirmative defense that ". . . none of the discriminatees was lawfully admitted for permanent residence or authorized to accept employment by the U.S. Attorney General. Therefore, the Agricultural Labor Relations Board cannot order reinstatement or back pay for these individuals inasmuch as such order would force Respondent to violate MSPA."

An administrative law judge held a three-day evidentiary hearing and recommended that the board direct Bertelsen to pay the backpay amounts specified by the general counsel.

The board, in *Phillip D. Bertelsen, Inc., dba Cove Ranch Management* (1990) 16 ALRB No. 11, awarded the 14 employees the backpay amounts calculated by the general counsel. The board's decision stated:[2]

"Respondent, in its answer to the proposed backpay specification and now before the Board in its exceptions to the ALJ's Supplemental Decision, primarily contends that the federal Migrant and Seasonal Agricultural Workers Protection Act (MSPA), 29 U.S.C. 1801 et seq., preempts the Agricultural Labor Relations Act (ALRA or Act) insofar as the latter requires reinstatement and backpay for fourteen discriminatees who Respondent claims are aliens not lawfully admitted for permanent residence or who have not been authorized by the Attorney General to accept employment in the United States.[3] Alternatively, Respondent contends that because of their 'unauthorized' immigration status, the discriminatees were rendered unavailable for work by 29 U.S.C. 1816(a), pursuant to the precepts of the United States Supreme Court decision in *Sure-Tan, Inc.* v. *NLRB* (1984) 467 U.S. 883 [104 S.Ct. 2803], and therefore backpay was tolled immediately upon the workers' discharge.

"Depending on whether Respondent is a federal farm labor contractor as defined by 29 U.S.C. 1802(7), it may be possible for an 'agricultural

---

[2]"Respondent" as used in the board's decision refers to Bertelsen.

[3]Under 29 U.S.C. 1816(a) a farm labor contractor as defined by 29 U.S.C. 1802(7) is prohibited from recruiting, hiring, employing, or using, with knowledge, the services of any individual who is an alien not lawfully admitted for permanent residence or who has not been authorized by the Attorney General to accept employment in the United States. The term 'unauthorized alien' shall hereafter refer to those individuals whose employment by a federal farm labor contractor is prohibited by the MSPA.

"We note that 29 U.S.C. 1816(a) was repealed effective June 1, 1987, by the Immigration Reform and Control Act (IRCA), section 101(b)(1)(C), and in its place, the provisions prohibiting the employment of aliens under IRCA (i.e., 8 U.S.C. 1324) were incorporated into the MSPA. Since the discriminatees in the instant matter were reinstated by June 1, 1987, Respondent's contentions do not arise therefore under IRCA, but rather under the now repealed prohibition provision of the MSPA."

employer' under the ALRA to find itself subject to the MSPA's restriction on the employment of unauthorized aliens. However, we do not here find it necessary or appropriate to reach this issue due to the state of the record herein. The alleged unauthorized immigration status of the fourteen discriminatees, the basis for Respondent's unavailability argument, was never established by Respondent as required. (See *Frudden Enterprises, Inc.* v. *ALRB* (1984) 153 Cal.App.3d 262, 269 [201 Cal.Rptr. 371] [once General Counsel shows gross backpay due, burden shifts to Respondent to show facts that mitigate or eliminate backpay liability].) Without Respondent's establishing such status, we have no basis to conclude that these discriminatees were unauthorized aliens or otherwise legally unavailable for continued employment with Respondent.

"Since we have found that Respondent has failed to prove the unavailability of these discriminatees, we need not resolve Respondent's preemption contention or other related issues as are also premised on the alleged unauthorized immigration status of the discriminatees. That being so, we do not adopt the ALJ's resolution of Respondent's preemption argument, nor find it necessary to reach the issues set forth in the parties' exceptions to the ALJ's Supplemental Decision.[4]

"Having found that Respondent failed to establish the unauthorized immigration status of the discriminatees, we must conclude that Respondent's refusal to reinstate the workers upon their application to return to work was unwarranted. Therefore, backpay is found to have continued to accrue until such time as the discriminatees were in fact reinstated on June 1, 1987."

Bertelsen then petitioned this court for review of the board's decision and order, and we granted review. (Lab. Code, § 1160.8.)

### DISCUSSION

We are called upon to determine whether the board erred when it held that "[t]he alleged unauthorized immigration status of the fourteen discriminatees, the basis for Respondent's unavailability argument, was never established by Respondent as required."

Based on previously quoted subsection (a) of former 29 United States Code section 1816, Bertelsen set out to show that each of the 14 employees

---

[4]"Nor do we reach the question of whether there was sufficient justification for preventing or estopping Respondent from invoking MSPA's policy against employment of unauthorized aliens as a means of limiting backpay, since we are without sufficient facts to indicate that the discriminatees were indeed unauthorized. The ALJ's resolution of this matter is not [*sic*] adopted as well."

was (1) an alien, (2) not lawfully admitted for permanent residence, and (3) not authorized by the Attorney General to accept employment. The board concedes in a supplemental briefing letter that Bertelsen met its burden of demonstrating that each of the 14 was an alien and was not lawfully admitted for permanent residence, and that Cerna was not authorized to work. What remained was whether each of the 13 Salvadoran employees was not authorized by the Attorney General to accept employment.

Bertelsen claims it met its burden when the parties entered into evidence a stipulation which, according to Bertelsen, conclusively established that none of the employees were authorized by the Attorney General to accept employment.

Regarding the 13 Salvadoran employees, the parties stipulated:

"During the period 1/1/84 through 5/31/87, none of the thirteen workers had any of the documents referred to in paragraph No. 1 of attachment 'A' of the subpoena served on each of them . . . (Copy of attachement [*sic*] 'A' of the subpoena is attached hereto . . .)."

A similar stipulation was reached pertaining to employee Cerna:

"He had none of the documents listed in paragraph No. 1 of attachment 'A', of the subpoena served on him (attached hereto as Exhibit 'A'), nor any other document issued by the Immigration and Naturalization Service."

Paragraph No. 1 of "Attachment 'A' " to each of the above stipulations stated as follows:

"1. All documents which evidence your status as a United States citizen or an individual lawfully authorized to work in the United States during the period January 1, 1984, through May 31, 1987. 'Documents' encompasses the following, but is not limited to:

"(a) Evidence of United States citizenship:

"(1) Birth certificate.

"(2) Certificate of citizenship.

"(3) Certificate of naturalization.

"(4) U. S. identification card (INS—Form I-179 or I-197).

"(5) Passport issued by United States identifying person as citizen of United States.

"(6) Consular report of birth (State Department Form FS-240).

"(7) Baptismal certificate under seal of a church or other religious body which practices infant baptism showing the individual's date and place of birth within the United States, its territories or possessions.

"(8) A document under seal of a religious body which does not practice infant baptism showing the individual's date and place of birth within the United States, its territories or possessions.

"(9) Tribal enrollment card in an American-Indian tribe recognized by the Bureau of Indian Affairs.

"(10) Other written advice from the Immigration and Naturalization Service (INS) attesting that such person is a citizen of the United States.

"(11) A copy of a written declaration made in accordance with § 500.1(i)(4), signed by the applicant under penalty of prosecution for violation of Title 18 U.S.C. 1001, and witnessed by the signature of the appropriate official of the Employment Service, affixed in the presence of the applicant, filed with the United States Employment Service or any of its affiliated offices, attesting that such person is a citizen of the United States, was born at the place stated and on the date set forth thereon, and reciting the following additional information:

"(i) Social Security number of such person (voluntary) and,

"(ii) Names and addresses of three adult citizens of the United States who can be contacted to verify declarant's citizenship.

"(12) A certificate issued by the Department of Labor, Bureau of Employment Security, Commonwealth of Puerto Rico which attests that, based upon examination of any of the documents prescribed by paragraphs (a)(1) through (11) of this section, the individual named and identified by the picture on that certificate was born within the United States (including its territories and possessions) at the place and on the date specified thereon and which sets forth such individual's home address (street and number, city, State, zip code) and Social Security number.

"(b) INS—Form I-151 or I-551, Alien Registration Receipt Card, which is proof that the alien has been lawfully admitted to the United States for

permanent residence. It is a wallet-sized laminated card, bearing a photograph of the alien and contains information concerning his alien registration number, date of admission as an immigrant, birth date and sex.

"(c) INS—Form I-94 (with or without a passport)—

"(1) INS—Form I-94 bearing an employment authorization consisting of the words 'Employment Authorized.'

"(2) INS—Form I-94 bearing the designation of H-2, as endorsed on the front or back of the form, authorizing a person to engage only in agricultural employment during the period of such person's authorized stay in the United States.

"(d) Any other written advice from the Immigration and Naturalization Service (INS) that such person is an alien authorized by INS to accept such employment in agriculture in the United States.

"(e) United States Armed Forces Discharge Papers."

Bertelsen argues that the stipulations that the 14 individuals "had" none of the documents described therein, i.e., that the 14 individuals "had" no documents which "evidence" that they "were lawfully authorized to work in the United States," established that the 14 individuals were "not . . . authorized by the Attorney General to accept employment" within the meaning of former United States Code section 1816(a). Bertelsen relies on 29 Code of Federal Regulations section 500.59, which stated[3]:

"A farm labor contractor will be considered in compliance with the prohibition against recruiting, hiring, employing or using the services of an illegal alien if the contractor can demonstrate that he relied in good faith on documentation, prescribed by the Secretary of Labor, attesting to a prospective employee's status as a United States citizen or as an individual lawfully authorized to work in the United States and the contractor had no reason to believe that the prospective employee was an illegal alien. Good faith reliance by the contractor on documentation prescribed by the Secretary of Labor will be deemed met by a written affirmation that the contractor relied on any of the following:

"(a) Acceptable evidence of United States citizenship:

---

[3] 29 Code of Federal Regulations section 500.59 was enacted in 1983 (see 48 Fed.Reg. 15805, 15813) and was removed from the Code of Federal Regulations in 1989 (see 54 Fed.Reg. 13329).

"(1) Birth certificate.

"(2) Certificate of citizenship.

"(3) Certificate of naturalization.

"(4) U. S. identification card (INS—Form I-179 or I-197).

"(5) Passport issued by United States identifying person as citizen of United States.

"(6) Consular report of birth (State Department Form FS-240).

"(7) Baptismal certificate under seal of a church or other religious body which practices infant baptism showing the individual's date and place of birth within the United States, its territories or possessions.

"(8) A document under seal of a religious body which does not practice infant baptism showing the individual's date and place of birth within the United States, its territories or possessions.

"(9) Tribal enrollment card in an American Indian tribe recognized by the Bureau of Indian Affairs.

"(10) Other written advice from the Immigration and Naturalization Service (INS) attesting that such person is a citizen of the United States.

"(11) A copy of a written declaration made in accordance with § 500.1(i)(4), signed by the applicant under penalty of prosecution for violation of Title 18 U.S.C. 1001, and witnessed by the signature of the appropriate official of the Employment Service, affixed in the presence of the applicant, filed with the United States Employment Service or any of its affiliated offices, attesting that such person is a citizen of the United States, was born at the place stated and on the date set forth thereon, and reciting the following additional information:

"(i) Social Security number of such person (voluntary) and,

"(ii) Names and addresses of three adult citizens of the United States who can be contacted to verify declarant's citizenship.

"(12) A certificate issued by the Department of Labor, Bureau of Employment Security, Commonwealth of Puerto Rico which attests that, based

upon examination of any of the documents prescribed by paragraphs (a)(1) through (11) of this section, the individual named and identified by the picture on that certificate was born within the United States (including its territories and possessions) at the place and on the date specified thereon and which sets forth such individual's home address (street and number, city, State, zip code) and Social Security number.

"(b) INS—Form I-151 or I-551, Alien Registration Receipt Card, which is proof that the alien has been lawfully admitted to the United States for permanent residence. It is a wallet-sized laminated card, bearing a photograph of the alien and contains information concerning his alien registration number, date of admission as an immigrant, birth date and sex.

"(c) INS—Form I-94 (with or without a passport)—

"(1) INS—Form I-94 bearing an employment authorization consisting of the words 'Employment Authorized.'

"(2) INS—Form I-94 bearing the designation of H-2, as endorsed on the front or back of the form, authorizing a person to engage only in agricultural employment during the period of such persons's [*sic*] authorized stay in the United States.

"(d) Any other written advice from the Immigration and Naturalization Service (INS) that such person is an alien authorized by INS to accept such employment in agriculture in the United States.

"(e) United States Armed Forces Discharge Papers."

The documents listed in 29 Code of Federal Regulations section 500.59 constitute the various types of "documentation" referred to in former 29 United States Code section 1816(b); the section lists documents upon which a farm labor contractor could rely, in good faith, to avoid culpability for hiring an unauthorized alien when the farm labor contractor had no reason to believe that the individual was an unauthorized alien.

Nothing in Code of Federal Regulations section 500.59 says that an individual who does not have any of the documents listed therein must necessarily *not* be authorized by the Attorney General to accept employment in the United States. Thus, we disagree with Bertelsen's claim that it conclusively established the employees were not authorized to work.

However, the present circumstances dictate that the inquiry should not stop here. The question next becomes whether the stipulation should be

deemed sufficient evidence of lack of authorization for employment to shift the burden to the alien employee to present evidence demonstrating that he was so authorized to work.

■ While *Frudden Enterprises, Inc.* v. *Agricultural Labor Relations Bd.* (1984) 153 Cal.App.3d 262 [201 Cal.Rptr. 371] states that in an unfair labor practice proceeding the burden is upon general counsel to show by a preponderance of the evidence that the employer has been guilty of an unfair labor practice and that an award of a particular amount of backpay is justified, and that the burden is then upon the employer to establish facts which would negative the existence of liability, a burden of proof may change or shift where there is a greater or almost exclusive availability of evidence to one party. (See 1 Witkin, Cal. Evidence (3d ed. 1986) § 138, pp. 120-121.)

■ Of concern here is whether Bertelsen had any reasonable means of proving the negative—that a particular worker was *not* authorized. In our orders dated February 21, 1991, and June 5, 1991, we requested supplemental briefing from the board addressing what Bertelsen could have done at the time of offering reinstatement to enable it to meet its burden in the proceedings that followed. In response to our first request, the board states in its letter brief dated March 15, 1991:

". . . [T]o meet its ultimate burden of proving unavailability of these individuals for work, Bertelsen must endeavor to obtain work authorizations from the INS. The Board has not attempted to define the extent to which an employer must act to obtain such work authorizations in order to be relieved of liability under a Board order. However, it is clear that the actions of Bertelsen were insufficient to relieve itself of liability. At the very least, it must adequately inform the workers as to how to obtain authorization. [Citation.] Presumably, if the employer took reasonable steps to obtain the work authorizations, either authorization would be granted, or there would be an official document generated by the INS specifically denying work authorization. Either scenario would relieve the employer of continuing liability under the Board's order."

Not satisfied that an adequate response had been given, we issued our second request for supplemental briefing, adding some clarification of what we were seeking. The board responds in its supplemental letter brief dated July 17, 1991, as follows:

". . . [T]he issue in this case is not whether or not the Petitioner [Bertelsen] has met 'its burden of demonstrating that each discriminatee was

and [*sic*] individual who is an alien not lawfully admitted for permanent residence or who has not been authorized by the Attorney General to accept employment.' The employer has no such burden. Petitioner's burden is to comply with the Board order without violating federal law if it is reasonably within its power to do so. The issue in this case is, 'what must the Petitioner have done to perfect an unavailability defense to the Board's reinstatement and backpay order.' The answer to that question is unknown. This is the only case that has arisen under these circumstances, and the Board has not provided a definitive answer as to what, if anything, an employer in these circumstances might do to perfect an unavailability defense to a backpay award. However, the Board did not reject that portion of the administrative law judge's (ALJ) decision suggesting actions the employer might have taken to reinstate the El Salvadorans, nor the Administrative Law Judge's discussion about the award to the Mexican Maximo [*sic*] Cerna. Consequently, it would appear that there is nothing the employer can do to avoid backpay liability prior to the time it questions the immigration status of the discriminatee(s) in a situation such as this one. Thereafter, it appears that some reasonable affirmative action on the part of the employer to comply with the Board order and the MSPA is necessary to relieve the employer of further liability for backpay." The second letter brief continues by citing the administrative law judge's finding that Bertelsen had not acted reasonably when it failed to tell the employees, after being so advised by an INS representative, "that the crew members should return to the Los Angeles INS office and request permission to work."

We initially note that the board's second letter brief directly contradicts the burden that the board's decision and order placed on Bertelsen: the board found that Bertelsen "failed to establish the unauthorized immigration status of the discriminatees." The board now tells us that Bertelsen "has no such burden." The board further tells us that there is no known answer to the issue in this case: what must Bertelsen have done to perfect the unavailability defense? Again we find a contradiction; the board's decision stated with regard to this defense that it "need not resolve this issue." In other words, the decision did not reach the ultimate issue because Bertelsen failed to prove the lack of work authorization. In any event, we note that if the board cannot now tell us what Bertelsen could reasonably have done, how could it expect Bertelsen to take some further action than Bertelsen did take to comply both with the order and the Migrant and Seasonal Agricultural Worker Protection Act?

Interestingly, the board directs us to the administrative law judge's finding that Bertelsen failed to tell the employees how to gain work authorization

after it had been told the employees needed to return to the INS office in Los Angeles. The fact that Bertelsen not only requested from the employees the previously described documents, which none of the employees could produce, and the further fact that Bertelsen contacted an INS representative only to find that the employees should personally report to the INS before starting to work, strongly implies that none of the employees were properly authorized for employment under the Migrant and Seasonal Agricultural Worker Protection Act. This evidence additionally suggests that Bertelsen took reasonable steps to comply with the earlier board order and the Migrant and Seasonal Agricultural Worker Protection Act. Neither the board's order for backpay and reinstatement nor the Migrant and Seasonal Agricultural Worker Protection Act informed Bertelsen that it was under a duty to tell the employees that they had to return to the INS to gain authorization, if they had no apparent authorization, and then to hold open its offer of reinstatement until such time as authorization was given to an employee, assuming that a particular employee could qualify. Under the present circumstances, each employee can be presumed to know whether he is authorized for employment and, if not, what he (not his employer) must do to gain authorization and a document verifying that fact.

While Bertelsen's proof did not conclusively establish that the employees were not authorized for employment, the evidence did create a presumption that the employees were not authorized sufficient to shift the burden to each employee to show he was authorized to work at the times in question. The board is unable to articulate what proof Bertelsen could have presented that would have satisfied the board's requirement that Bertelsen prove a particular employee was not authorized to work. On the other hand, all an employee would need to have done to prove authorization would be to produce an INS document verifying authorization; he, not the employer, was the person who could apply for authorization in the first place.

■ Our review is not limited to whether substantial evidence supported the board's decision; we may also consider whether an error of law was made and whether the decision was procedurally sound. (*Agricultural Labor Relations Bd.* v. *Abatti Produce, Inc.* (1985) 168 Cal.App.3d 504, 512 [214 Cal.Rptr. 283], disapproved on other grounds in *Agricultural Labor Relations Bd.* v. *Tex-Cal Land Management, Inc.* (1987) 43 Cal.3d 696 [238 Cal.Rptr. 780, 739 P.2d 140].) ■ For the reasons already stated, we determine the instant decision was procedurally unsound. We therefore reverse and remand the matter to allow each of the 13 Salvadoran employees to prove he was authorized for employment at relevant times. (The board concedes the 14th employee, Cerna, was "not . . . authorized by the Attorney General

to accept employment.") Once the board determines this limited issue consistent with the procedure we have outlined herein, it shall proceed to decide any remaining issues necessary to reaching a complete decision.

### DISPOSITION

The board's order is reversed and remanded for further proceedings consistent with our decision herein that the burden has shifted to each individual real party in interest to establish that he was at relevant times "authorized by the Attorney General to accept employment." No party is awarded costs on appeal herein.

Best, P. J., and Dibiaso, J., concurred.