[Civ. No. 61605. Second Dist., Div. Three. Mar. 24, 1982.]

LEOPOLDO LOZANO, Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD, Defendant
and Respondent;
SALEM HOUSE, INC., Real Party in Interest and Respondent.

**COUNSEL**

Rogelio R. Flores, Ana I. Segura and Charles F. Elsesser, Jr., for Plaintiff and Appellant.

George Deukmejian, Attorney General, Thomas E. Warriner, Assistant Attorney General, Anne S. Pressman and Elizabeth Hong, Deputy Attorneys General, for Defendant and Respondent.

No appearance for Real Party in Interest and Respondent.

**OPINION**

AMERIAN, J.*—An employer issues an order in English to an employee who does not speak English. The employer utilizes a fellow worker as interpreter. The employee disobeys the order and is terminated for such conduct. He files a claim for unemployment insurance benefits.

This case poses the question of how the employer must prove in administrative proceedings that the order was communicated to the employee, if the employee is to be disqualified for unemployment benefits because of his misconduct.

---

*Assigned by the Chairperson of the Judicial Council.

*Facts*

Leopoldo C. Lozano (appellant) had worked for Salem House (employer) for 22 years. In 1977 he was repeatedly admonished about wasting time and interfering with the production of other employees. On June 6, 1977, appellant was specifically warned in writing with respect to ceasing his work, leaving his work station without supervisor's permission and engaging in conversation with another employee. The letter went on to state, "Since you received verbal warnings previously for the same violations any additional violations will result in severe disciplinary action which will include discharge."

On June 15, 1977, appellant was issued a second warning for ceasing work and engaging another employee in conversation. The warning was issued at approximately 11:30 a.m. and related to specific instances on that date. Appellant sought to discuss the incident with his supervisor. Employer's representative at the meeting was Mr. Crandall, who speaks no Spanish and does not understand Spanish. Appellant speaks limited English and speaks and understands Spanish. Two fellow workers were selected by employer to act as interpreters.

What occurred at the conclusion of this meeting is in dispute. Appellant states that in the conversation he told Crandall he was going to take his lunch hour and that they (Crandall and the two interpreters) talked amongst themselves in English, but no one communicated anything to appellant in Spanish. Crandall said that appellant told him that he (appellant) was going to take his full lunch hour, and "we" told him, no, that wasn't the agreement we had at the meeting to begin with.

When the meeting ended appellant took his full lunch, left the premises and returned to work 25 minutes later. As a result of this 25 minute absence from work, appellant's termination was processed, effective at 3:30 p.m. that date.

*Procedural History*

Appellant filed a claim for unemployment insurance benefits. The California Employment Development Department issued a determination that appellant was not eligible to receive unemployment insurance benefits by reason of having been discharged for misconduct within the

meaning of section 1256 of the Unemployment Insurance Code.[1] (All references herein are to the Unemployment Insurance Code, unless otherwise indicated.)

Appellant perfected an administrative appeal and the administrative law judge (ALJ) conducted a hearing. Only appellant and Crandall testified at the hearing. Neither interpreter, who was in attendance on June 15, was present at the hearing. No evidence, therefore, was presented to the ALJ, as to what exactly was communicated in Spanish to appellant regarding his taking time for lunch after the meeting on June 15.

The decision of the ALJ was in favor of appellant on the grounds that: "(a) The employer discharged claimant for failing to return to work after his lunch break on time although instructed to do so.

"(b) Claimant had never been warned for tardiness or insubordination.

"(c) There was a dispute in the evidence as to whether or not the employer specifically instructed the claimant to return from lunch on time.

"(d) This dispute may have been occassioned [sic] by the fact that climant [sic] spoke only limited English and the meeting between the employer and the claimant took place using the services of an interpreter.

"(e) In any event, since it was undisputed that claimant had never been warned for similar conduct, and this was an isolated incident in the 22 year work history of the claimant, he could not be found to have wilfully breached any duty to the employer and that his discharge was for reasons other than misconduct within the meaning of the Unemployment Insurance Code § 1256."

---

[1]That section provides, in part: "An individual is disqualified for unemployment compensation benefits if the director finds that he left his most recent work voluntarily without good cause or that he has been discharged for misconduct connected with his most recent work.

"An individual is presumed to have been discharged for reasons other than misconduct in connection with his work and not to have voluntarily left his work without good cause unless his employer has given written notice to the contrary to the director within five days after the termination of service, setting forth facts sufficient to overcome the presumption. The presumption provided by this section is rebuttable. . . ."

Employer filed ·an appeal with the California Unemployment Insurance Appeals Board (Board) and the Board reversed the ALJ and ruled in favor of employer.

The Board found: "(a) In a discussion between claimant and his supervisor, there was a specific instruction that claimant could not take an extended lunch period.

"(b) Claimant had received specific warnings against absenting himself from his work station without permission on June 15."

The Board concluded that: "(a) Claimant's action of absenting himself from his work station for a period of approximately 25 minutes can only be construed as willful and deliberate.

"(b) The resulting discharge was for misconduct as that term is used under the code."

Appellant filed petition for writ of mandate (Code Civ. Proc., § 1094.5) with the superior court. In due course, judgment denying peremptory writ of mandamus was entered. It is from this judgment that appeal is taken.

### Law

In reviewing a decision of the Board, the superior court exercises its independent judgment on the evidentiary record of the administrative proceedings and inquires whether the findings of the administrative agency are supported by the weight of the evidence. (Code Civ. Proc., § 1094.5, subds. (b), (c); *Lacy v. California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1132 [95 Cal.Rptr. 566].)

On review of the judgment, the appellate court is confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial, credible and competent evidence. (*Warriner v. Unemployment Ins. Appeals Bd.* (1973) 32 Cal.App.3d 353, 358 [108 Cal.Rptr. 153]; *Lacy v. California Unemployment Ins. Appeals Bd., supra*, 17 Cal.App.3d 1128, 1134.) The appellate court is not so confined if the probative facts are uncontradicted, not susceptible of opposing inferences and, as a matter of law, compel a different conclusion from that reached by the trial court. (*General Motors Corp. v. Cal. Unem-*

*ployment Ins. Appeals Bd.* (1967) 253 Cal.App.2d 540, 545 [61 Cal. Rptr. 483].)

Wilful misconduct, such as to disqualify an employee under section 1256, has been defined as, "'conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, ... [but not] mere inefficiency, unsatisfactory conduct ... inadvertencies or ordinary negligence ....'" (*Lacy* v. *California Unemployment Ins. Appeals Bd., supra,* 17 Cal.App.3d 1128, 1132, quoting from *Maywood Glass Co.* v. *Stewart* (1959) 170 Cal.App.2d 719, 724 [339 P.2d 947].)

"So described, the test is essentially volitional. The conduct may be harmful to the employer's interests and justify the employee's discharge; nevertheless, it evokes the disqualification for unemployment insurance benefits only if it is wilful, wanton or equally culpable." (*Jacobs* v. *California Unemployment Ins. Appeals Bd.* (1972) 25 Cal.App. 3d 1035, 1037 [102 Cal.Rptr. 364].) In this context "the test for misconduct is essentially volitional." (*Rowe* v. *Hansen* (1974) 41 Cal.App. 3d 512, 521 [116 Cal.Rptr. 16].)

Turning to the case before us, the superior court found that:

"X

"Petitioner requested an employee/employer conference which was held during his regular lunch hour. The conference was conducted in Spanish and English.

"XI

"The conference lasted almost the entire lunch hour.

"XII

"At the end of the conference, petitioner indicated that he would then take his allotted time for lunch. The employer indicated that 'no' petitioner could not now take a lunch break at that time. The conference had been convened with the understanding that worktime would not be used for the meeting.

"XIII

"Real Party in interest's negative reply of 'no' is not subject to misunderstanding since 'no' has the same meaning in English and Spanish."

The only evidentiary proceeding on which any findings (whether by the ALJ or the Board or the trial court) could be supported is the hearing before the ALJ, held on September 7, 1977. A search of that record discloses no testimony that appellant was ever told, in Spanish, that he must return to work at the conclusion of the June 15 meeting.

Thus the decision of the ALJ in paragraph (c) thereof was consistent with the evidence presented. But the finding of the Board in paragraph (a) was not supported by any evidence.

As to the trial court's finding XII, that is only partially supported by the evidence. The first sentence, "At the end of the conference, petitioner indicated that he would then take his allotted time for lunch." is undisputed.

The second sentence, "The employer indicated that 'no' petitioner could not now take a lunch break at that time." is only partly supported by the evidence. There is evidence the employer made the statement in English. There is no evidence in the record that the statement was communicated in Spanish to appellant.

The third sentence, "The conference had been convened with the understanding that work time would not be used for the meeting." is likewise only partly supported by the evidence. The employer's representative testified that was the understanding. There is no evidence of any statement by appellant that he entered the meeting with such an understanding. There is no evidence of conduct by appellant from which it might be inferred that appellant entered the meeting with such an understanding.

We are faced, then, with a situation where the Board's determination is not supported by the evidence. Since the trial court has the power to exercise its independent judgment on the evidence, was the evidence sufficient to support the determination of the trial court? We answer that question in the negative.

By appealing the ruling of the ALJ to the Board, the employer sought to have his reserve account relieved of charges. The ruling of the Board did include a provision relieving the employer's reserve account of charges.

Concerning the employer's reserve fund, the burden of proving disqualification falls upon the employer, not the employee, when an applicant's eligibility for benefits is in dispute and the employer seeks to protect its reserve fund under the code. (*Maywood Glass Co. v. Stewart, supra*, 170 Cal.App.2d 719, 725.)[2]

It is employer who must present evidence that an order was given to appellant if there is to be sufficient evidence to support a determination of misconduct (where the worker disobeys the order), which will disqualify a worker from receiving unemployment insurance benefits. We hold that proof of the giving of such order must include proof that the order was given in a language that would be understood by the employee. There was no direct proof here. Because employer's witness did not speak Spanish, he would not be competent to testify as to what was told to the employee in Spanish, and did not so testify. The only evidence in the record is from the employee that no one communicated anything to him in Spanish at the conclusion of the meeting, when he told the employer he was going to take his lunch.

The judgment is reversed and the case is remanded.

Potter, Acting P. J., and Lui, J., concurred.

---

[2]Section 1032 provides, in part, "If it is ruled under section 1030 or 1328 that the claimant left the employer's employ voluntarily and without good cause or was discharged by reason of misconduct connected with his or her work, ... benefits paid to the claimant subsequent to the termination of employment due to such voluntary leaving or discharge, ... which are based upon wages earned from such employer prior to the date of such termination of employment, shall not be charged to the account of such employer ...."