[No. C004315. Third Dist. Apr. 20, 1993.]

NOEMI L. GUTIERREZ, Plaintiff and Appellant, v.
EMPLOYMENT DEVELOPMENT DEPARTMENT et al., Defendants and
Respondents.

1792

**COUNSEL**

Pauline Gee and Stephen A. Rosenbaum for Plaintiff and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Charlton G. Holland, Assistant Attorney General, Elisabeth C. Brandt and Susan A. Nelson, Deputy Attorneys General, for Defendants and Respondents.

**OPINION**

PUGLIA, P. J.—Unemployment Insurance Code section 1253, subdivision (c) disqualifies an applicant from receiving unemployment benefits for any period during which she is not able or available to work. (Further statutory

references to sections of an undesignated code are to the Unemployment Insurance Code.) In this appeal we conclude an undocumented alien who does not have work authorization from the federal Immigration and Naturalization Service (INS) is not available to work within the meaning of section 1253, subdivision (c). The Unemployment Insurance Appeals Board (Board) denied benefits on this basis, and the trial court denied mandamus relief. We shall affirm.

## I

Plaintiff is a Mexican citizen who entered the United States in 1978 without inspection as a "[v]isitor without visa." Having stayed beyond her authorized period, plaintiff became subject to deportation. In 1980, she received a voluntary INS departure order setting a departure date of May 15, 1981, later extended to February 15, 1982. She also received INS work authorization which expired in March 1982.

Plaintiff continued to reside in the United States beyond her voluntary departure date, working as a seasonal farm laborer. In 1985, she received an INS notice to appear July 9, 1985, for deportation. Plaintiff applied for and received a stay of deportation pending a hearing on her motion to reopen the proceedings.

On November 3, 1985, plaintiff applied for unemployment insurance benefits for the benefit year beginning April 14, 1985. The State Employment Development Department (EDD) issued a notice denying benefits pursuant to section 1264, subdivision (a). That section authorizes benefits to aliens only if, at the time qualifying services were performed, they fell within one of three categories: (1) lawfully admitted for permanent residence, (2) lawfully present for the purpose of performing the services, or (3) "permanently residing in the United States under color of law."[1] An administrative law judge found plaintiff fell within the third category and therefore was not precluded by section 1264 from receiving benefits.

This decision was not appealed. Instead, EDD issued another notice denying benefits, this time pursuant to section 1253. The administrative law

---

[1] Section 1264, subdivision (a) reads: "(a) Unemployment compensation benefits, extended duration benefits, and federal-state extended benefits shall not be payable on the basis of services performed by an alien unless the alien is an individual who was lawfully admitted for permanent residence at the time the services were performed, was lawfully present for purposes of performing the services, or was permanently residing in the United States under color of law at the time the services were performed, including an alien who was lawfully present in the United States as a result of the application of the provisions of Section 203(a)(7) or Section 212(d)(5) of the Immigration and Nationality Act."

judge upheld EDD's determination, concluding plaintiff was not available for work because she lacked INS work authorization. Plaintiff appealed and the Board affirmed. Plaintiff then initiated this action seeking a writ of administrative mandamus, which the trial court denied.

## II

■ In reviewing a decision of the Board, the trial court exercises independent judgment on the evidence presented in the administrative proceeding. The appellate court is normally confined to determining whether the findings and judgment of the trial court are supported by substantial evidence. (*Lozano* v. *Unemployment Ins. Appeals Bd.* (1982) 130 Cal.App.3d 749, 754 [182 Cal.Rptr. 6]; *Agnone* v. *Hansen* (1974) 41 Cal.App.3d 524, 527 [116 Cal.Rptr. 122].) However, "[t]he appellate court is not so confined if the probative facts are uncontradicted, not susceptible of opposing inferences and, as a matter of law, compel a different conclusion from that reached by the trial court. [Citation.]" (*Lozano, supra,* 130 Cal.App.3d at pp. 754-755; *Agnone, supra,* 41 Cal.App.3d at p. 527.)

The probative facts here are few and not in dispute. During the period of her qualifying employment, October 1983 through September 1984, plaintiff was permanently residing in the United States under color of law within the meaning of section 1264. However, during the period for which unemployment benefits are sought, plaintiff had no INS work authorization.

The unemployment compensation statutes were enacted as part of a national plan to establish unemployment reserves and assist in stabilizing employment. (§ 101.) According to section 100, the policy underlying the provision in the statute "for the compulsory setting aside of funds" is so they may "be used for a system of unemployment insurance providing benefits for persons unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum." (See *Perales* v. *Department of Human Resources Dev.* (1973) 32 Cal.App.3d 332, 335-336 [108 Cal.Rptr. 167].)

■ To promote this policy, section 1253 was enacted "to ensure that benefits not be paid to persons who could be working, and to encourage and help those persons to find suitable work." (*International Union of United Auto etc. Workers* v. *Department of Human Resources Dev.* (1976) 58 Cal.App.3d 924, 929-930 [130 Cal.Rptr. 368].) This section provides:

"An unemployed individual is eligible to receive unemployment compensation benefits with respect to any week only if the director finds that:

"(a) A claim for benefits with respect to that week has been made in accordance with authorized regulations.

"(b) He or she has registered for work, and thereafter continued to report, at a public employment office or any other place as the director may approve. Either or both of the requirements of this subdivision may be waived or altered by authorized regulation as to partially employed individuals attached to regular jobs.

"(c) He or she was able to work and *available for work* for that week.

"(d) He has been unemployed for a waiting period of one week as defined in Section 1254, unless this waiting period has been waived pursuant to Section 8571 of the Government Code.

"(e) He or she conducted a search for suitable work in accordance with specific and reasonable instructions of a public employment office." (Italics added.)

██ Ability to work, as used in section 1253, subdivision (c), involves an individual's mental and physical condition, while availability involves willingness and readiness to accept employment. Readiness in turn refers to an individual's " 'personal circumstances' and any self-imposed conditions that restrict employment options." (Dorskind, *The Concept of "Availability" in California's Unemployment Insurance Program: Any Reason for Requiring Good Cause?* (1978) 66 Cal.L.Rev. 1293, 1302-1303.)

In *Alonso v. State of California* (1975) 50 Cal.App.3d 242 [123 Cal.Rptr. 536], the court held an illegal alien having no INS work authorization is not available for work within the meaning of section 1253, subdivision (c). The court explained: "An illegal alien who enters the United States without inspection in violation of 8 United States Code section 1251 is subject to deportation. His entry is illegal and any subsequent acts done by him in this country would be in furtherance of that illegal entry. To allow an illegal alien to collect unemployment benefits would reward him for his illegal entry into this country." (50 Cal.App.3d at pp. 253-254.)

██ Plaintiff contends *Alonso* was wrongly decided and, in any event, is no longer valid due to a subsequent California Supreme Court decision and the enactment of section 1264. In *Sanchez v. Unemployment Ins. Appeals Bd.* (1977) 20 Cal.3d 55 [141 Cal.Rptr. 146 [569 P.2d 740], the court addressed the concept of "availability" as used in section 1253, subdivision (c). According to the court, the term means "no more than (1) that an individual

claimant be willing to accept suitable work which he has no good cause for refusing and (2) that the claimant thereby make himself available to a substantial field of employment." (20 Cal.3d at p. 67, fn. omitted.) Plaintiff contends *Sanchez* established a two-part test for availability, which test does not include consideration of INS work authorization.

Plaintiff reads too much into the decision. In *Sanchez*, an unemployed waitress was denied benefits because she refused to accept employment requiring weekend work. Such work conflicted with her child care responsibilities. The trial court concluded this materially reduced her opportunities for employment and therefore rendered her unavailable. The Supreme Court reversed and remanded for a determination of whether the claimant had good cause for refusing employment requiring weekend work and whether this restriction left her available to a substantial field of employment. (20 Cal.3d at pp. 68-69.)

*Sanchez* neither overruled nor even discussed *Alonso*. The claimant was not an alien, and concerns regarding INS work authorization were not raised or considered. The dispositive issue was whether the claimant's voluntary restriction on employment options rendered her unavailable. ■ "It is well established that 'cases are not authority for propositions not considered therein.' [Citations.]" (*Worthley* v. *Worthley* (1955) 44 Cal.2d 465, 471-472 [283 P.2d 19].) ■ Furthermore, under the *Sanchez* test of availability, it is readily apparent one not authorized to work would be unavailable to even more than a substantial field of employment.

Plaintiff also contends *Alonso*'s interpretation of section 1253 conflicts with section 1264 which, as the more recent enactment and one specifically applicable to aliens, should control. Section 1264 was enacted in response to the federal Unemployment Tax Act, which among other things requires states to impose restrictions on the payment of unemployment benefits to aliens as a condition of certification of the state's unemployment insurance legislation. (26 U.S.C. § 3304 (a)(14)(A).) As previously indicated, section 1264, subdivision (a), which mirrors 26 United States Code section 3304(a)(14)(A), prohibits the payment of benefits to aliens unless, during the period of qualifying employment, they fell within one of three categories. Section 1253 applies its criteria of eligibility to all applicants including the criterion that the applicant be able and available to work at the time benefits are sought. In the case of aliens, *Alonso* held availability includes INS work authorization. (50 Cal.App.3d 242.)

It is readily apparent sections 1253 and 1264 involve completely independent questions. A determination that an applicant qualifies for benefits under

section 1264 does not resolve whether she is available to work because, even ignoring the different time periods involved, only one of the three alternatively qualifying criteria in section 1264 requires INS work authorization. Because the considerations are distinct, the two sections are not in conflict.

Nor does section 1264 imply a legislative policy that aliens satisfying one of the three criteria be afforded unemployment benefits. Plaintiff argues the federal legislation, and hence section 1264, expressly *extended* unemployment benefits to the three categories of aliens. However, this interpretation is inconsistent with the language used. Both 26 United States Code section 3304(a)(14)(A) and section 1264, subdivision (a) indicate compensation "shall *not* be payable" unless the applicant falls within one of the three categories. (Italics added.) No reference is made to other possible limitations. Thus, *Alonso*'s interpretation of availability as required by section 1253 has not been supplanted and we find it controlling here.

The weight of authority from other jurisdictions is in accord. (See, e.g., *Duenas-Rodriguez* v. *Industrial Com'n* (1980) 199 Colo. 95 [606 P.2d 437, 439]; *Alfred* v. *Fla. Dept. of Labor & Employ. Sec.* (1986) 487 So.2d 355, 358; *Pinilla* v. *Bd. of Rev. in Dept. of L. & I.* (1978) 155 N.J.Super. 307 [382 A.2d 921, 923]; *Zapata* v. *Levine* (1975) 50 A.D. 2d 681 [375 N.Y.S.2d. 424]; but see *Flores* v. *Dept. of Jobs & Training* (Minn. 1987) 411 N.W.2d 499 [indicating applicant was not unavailable as his employment was not "illegal"; employment would have subjected him to deportation only].) In *Duenas-Rodriguez* v. *Industrial Com'n., supra*, the Colorado Supreme Court explained: "The courts have consistently held aliens who enter the United States on nonimmigrant visas and aliens who enter illegally have no constitutional right to work. . . . An illegal alien is also subject to deportation. . . . [¶] Such an individual is legally unable to work, and 'legal inability to work is as disqualifying as physical inability to work.' " (606 P.2d at p. 439, citations omitted.)

*Alonso* v. *State of California, supra*, 50 Cal.App.3d 242, is also consistent with the official position of the federal Department of Labor. In Unemployment Insurance Program Letter No. 1-86, the Department of Labor indicates: "Under the laws of all States, a claimant must be 'able and available' to work to be eligible for unemployment compensation. In addition to meeting other State availability requirements, an alien must be legally authorized to work in the United States to be considered 'available for work.' Therefore, an alien without current, valid authorization to work from the INS is not legally available for work and not eligible for benefits. [¶] Availability for work while claiming benefits is a separate issue from the alien's status while working during the base period." (51 Fed.Reg., No. 161, p. 29714 (Aug. 20, 1986).)

In order to be available for employment within the meaning of section 1253, an individual must be willing and able to accept suitable work within a substantial field of employment. (*Sanchez* v. *Unemployment Ins. Appeals Bd.*, *supra*, 20 Cal.3d at p. 67.) This presupposes the individual is lawfully permitted to accept such employment which, in the case of an undocumented alien, requires INS work authorization. To hold otherwise would render meaningless the other requirements for eligibility contained in section 1253, such as registering and reporting to an unemployment office (§ 1253, subd. (b)) and conducting a search for employment (§ 1253, subd. (e)).

## III

Plaintiff contends, even assuming availability to work requires that such employment be legal, the trial court erred in concluding lack of INS work authorization rendered her employment illegal. According to plaintiff, during the period for which unemployment insurance benefits were sought, it was not illegal for her to work because there were no penal or other provisions prohibiting employers from hiring undocumented aliens. Such illegality did not arise, she argues, until enactment of the federal amnesty law in November 1986. (See 8 U.S.C. § 1324a.)

Even ignoring former Labor Code section 2805, which prohibited employers from knowingly employing aliens not entitled to residence in the United States where such employment would adversely affect resident workers (Stats. 1983, ch. 1092, § 218, p. 4019), plaintiff's argument must be rejected. Whether or not it was lawful for an *employer* to hire an alien having no INS work authorization, it was not lawful for the *employee* to accept such work. (See *Sure-Tan, Inc.* v. *NLRB* (1984) 467 U.S. 883, 903 [81 L.Ed.2d 732, 750, 104 S.Ct. 2803] ["employees must be deemed 'unavailable' for work [for purposes of a back pay award] . . . during any period when they were not lawfully entitled to be present and employed in the United States"].) Whether or not employment in this country would have subjected plaintiff or her employer to criminal sanctions, the fact remains such employment was not permitted by federal law. (See 8 C.F.R. § 214.1(e); 36 Fed.Reg., No. 83, pp. 8048-8049 (Apr. 29, 1971), as amended, 43 Fed.Reg., No. 59, p. 12674 (Mar. 27, 1978).) Hence, plaintiff was not available to work.[2]

---

[2]Plaintiff also contends the trial court erred in concluding she was not permanently residing in the United States under color of law at the time benefits were sought. However, the trial court specifically indicated this issue was not before it. The only issue decided was whether she was available for work within the meaning of section 1253.

The judgment is affirmed.

Sims, J., and Scotland, J., concurred.

A petition for a rehearing was denied May 18, 1993.