[No. C029929. Third Dist. Apr. 28, 2000.]

MOHSEN ZABETIAN, Plaintiff and Appellant, v.
MEDICAL BOARD OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

James Jay Seltzer and Timothy D. Murphy for Plaintiff and Appellant.

Bill Lockyer, Attorney General, and Heidi R. Weisbaum, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**BLEASE, Acting P. J.**—Plaintiff Mohsen Zabetian appeals from the judgment denying his petition for a writ of mandate to set aside the order of the Medical Board of California (the Board), which imposed a two-year probationary period for two "[r]epeated negligent acts." (Bus. & Prof. Code, § 2234, subd. (c).)[1]

Zabetian claims the phrase "[r]epeated negligent acts," as used in section 2234, requires *more than* two negligent acts. We disagree.

Treating the appeal as a petition for extraordinary relief in the nature of mandamus to review the decision of the trial court, we shall deny the petition. (§ 2337.)

### FACTUAL AND PROCEDURAL BACKGROUND

The Board disciplined Zabetian for two acts of negligence, both involving the same 15-year-old patient.

The first incident consisted of Zabetian's leaving town while his patient was in intensive care at Moreno Valley Hospital without securing coverage

---

[1] References to a section are to the Business and Professions Code.

for the patient. Zabetian was also on call at the hospital's emergency room during that time, and failed to secure coverage for his emergency room on-call duties as well.

The second incident involved Zabetian's subsequent diagnosis and treatment of the patient. Zabetian performed an emergency appendectomy on the patient. Approximately four days after the patient was released from the hospital, he returned to the hospital's emergency room exhibiting signs of peritonitis. Zabetian failed to correctly diagnose the patient, and did not perform surgery. Instead, he treated the boy by draining the site of the incision and prescribing antibiotics.

Three days after Zabetian accepted the patient's postoperative care, another doctor performed surgery and found a huge pelvic mass, diffuse severe peritonitis, dense small and large bowel adhesions, and abscesses.

The Board instituted a disciplinary action against Zabetian. An administrative law judge (ALJ) determined Zabetian was guilty of repeated negligent acts in his care of the patient. The ALJ's proposed decision states: "[R]espondent exhibited a series of errors in judgment which are clearly grounds for concern about his practice. The negligent acts, in leaving the area without finding coverage for his patient for the ER and his delay in responding to his patient's need for surgery, do demonstrate a disturbing pattern which does justify the imposition of discipline."

The Board adopted the ALJ's proposed decision, placing Zabetian on probation for two years.

Zabetian petitioned the superior court for a writ of mandate to set aside the Board's order. The trial court denied the petition.

██ Zabetian filed this appeal from the trial court's judgment. We directed the parties to file supplemental briefs addressing the issues: (1) whether the order appealed from is reviewable solely by petition for extraordinary writ, pursuant to section 2337; and (2) whether section 2337 is unconstitutional.[2] Subsequently, the California Supreme Court held that section 2337 does not violate the appellate jurisdiction clause of article VI, section 11 of the California Constitution. (*Leone v. Medical Board* (2000) 22 Cal.4th 660 [94 Cal.Rptr.2d 61, 995 P.2d 191].) That rules out appeal as the mode of review in this case.

---

[2]Section 2337 requires that appellate court review of a superior court decision reviewing the revocation, suspension or restriction of a physician's medical license by the Board be by way of a petition for extraordinary writ.

█ However, the Board submits this court may treat the appeal as an application for writ of mandate in an appropriate case and that this case is appropriate for exercise of the court's discretion because it concerns an issue of first impression, which has been briefed by the parties.

We may treat an improper appeal as a petition for an extraordinary writ in unusual circumstances. (*Olson v. Cory* (1983) 35 Cal.3d 390, 401 [197 Cal.Rptr. 843, 673 P.2d 720]; *Rogers v. Municipal Court* (1988) 197 Cal.App.3d 1314, 1317 [243 Cal.Rptr. 530].) Such unusual circumstances are present where the matter presents an issue of first impression, the issue has been thoroughly briefed and our determination is purely one of law. (*Rogers, supra*, at p. 1317.) That is also the case when review by writ is the statutorily prescribed mode of review. These circumstances are present in this case. Therefore, we treat the appeal as a petition for extraordinary writ.

## DISCUSSION

█ Section 2234 provides that the Board shall take action against a medical licensee charged with "unprofessional conduct," which includes "[r]epeated negligent acts."[3] The sole question before us is one of statutory construction,[4] whether that phrase requires more than two repeated acts.

█ The judicial task of statutory construction necessarily focuses on the language of the statute for the obvious reason that "the meaning of a statute is to be sought in the language used by the Legislature." (*In re Miller* (1947) 31 Cal.2d 191, 198 [187 P.2d 722].)

"When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it." (*People v. Overstreet*

---

[3]The full text of section 2234 is as follows: "The Division of Medical Quality shall take action against any licensee who is charged with unprofessional conduct. In addition to other provisions of this article, unprofessional conduct includes, but is not limited to, the following:

"(a) Violating or attempting to violate, directly or indirectly, or assisting in or abetting the violation of, or conspiring to violate, any provision of this chapter.

"(b) Gross negligence.

"(c) Repeated negligent acts.

"(d) Incompetence.

"(e) The commission of any act involving dishonesty or corruption which is substantially related to the qualifications, functions, or duties of a physician and surgeon.

"(f) Any action or conduct which would have warranted the denial of a certificate.

"(g) The practice of medicine from this state into another state or country without meeting the legal requirements of that state or country for the practice of medicine. Section 2314 shall not apply to this subdivision. This subdivision shall become operative upon the implementation of the proposed registration program described in Section 2052.5."

[4]As the only issue before this court is one of law, i.e., the interpretation of a statute, the Board's request to augment the record to add portions of the administrative record is denied. Zabetian's request for judicial notice is denied.

(1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288].) Whether that is the case can be determined only when the language is sought to be applied to the case at hand. Each party will normally advance a candidate meaning of consequence to the party's position. If it cannot be determined from the language of the statute which is the correct application, extrinsic aids may be employed bearing on the objects to be achieved, the evils to be remedied, and the legislative history of the enactment. (*Long Beach Police Officers Assn. v. City of Long Beach* (1988) 46 Cal.3d 736, 741 [250 Cal.Rptr. 869, 759 P.2d 504].) We call this an inquiry into legislative intent, i.e., an inquiry into the plausible meanings to be ascribed to the language in view of the history and context of the legislation.[5] It does not sanction a judicial construction predicated upon a perceived policy which is not within the semantic constraints of the statutory language. "The Legislature may make no law except by statute . . . ." (Cal. Const., art. IV, § 8, subd. (b).)

■ The statutory language at issue is ambiguous. "Repeated" is commonly understood to mean something which is done again, or something which is done again *and* again. (Webster's 3d New Internat. Dict. (1971) p. 1924.) Since the meaning of the words is unclear, we look to extrinsic aids. Here, they are of two kinds.

First, the declared intent of the disciplinary statutes is the protection of the public. "Protection of the public shall be the highest priority for the Division of Medical Quality, . . . and administrative law judges of the Medical Quality Hearing Panel in exercising their disciplinary authority." (§ 2229.) This generally supports a resolution of any ambiguity in favor of the Board.

Second, the history of amendments to section 2234 shows a progressive broadening of the authority of the Board.

In 1976 section 2361 (now § 2234) was amended to add "[r]epeated similar negligent acts" to the nonexclusive list of actions which constitute "unprofessional conduct."[6] (Stats. 1976, ch. 1185 § 47, p. 5302.) At one point, Assembly Bill No. 3371 (1975-1976 Reg. Sess.), the vehicle for

---

[5]"The significance to be accorded extrinsic evidence of legislative intention (or purpose) depends upon its capacity to resolve ambiguities in statutory language, including the contextual ambiguities relating to implications of meaning. Despite the anthropomorphic overtones of the word 'intention,' the Legislature is not a person. What goes on in the minds of individual legislators when enacting a statute cannot fix its meaning. Rather, the Legislature is a collective entity and its 'intentions' are primarily known by its legislative acts." (*In-Home Supportive Services v. Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 739 [199 Cal.Rptr. 697], fn. omitted.)

[6]Other instances of unprofessional conduct specified in the 1976 amendment included violation of the Medical Practice Act, gross negligence, incompetence, acts involving dishonesty or corruption which are substantially related to one's qualifications as a doctor, and the

enactment of section 2361, was amended to insert the phrase "a pattern of negligence." (Assem. Com. on Health, Analysis of Assem. Bill No. 3371 (1975-1976 Reg. Sess.).) This language was removed after the Attorney General objected that there would be a problem defining "a pattern." (*Ibid.*) The language was changed to "[r]epeated, similar negligent acts."

In 1983, section 2234 was amended to delete the word, "similar." (Stats. 1983, ch. 398, § 2, p. 1662.) The staff analysis of Senate Bill No. 109, the vehicle for its enactment, noted the purpose of the bill was to provide the Board with "increased authority in resolving questions of physician competence." (Sen. Com. on Health and Welfare, Staff Analysis of Sen. Bill No. 109 (1983-1984 Reg. Sess.) as amended Apr. 4, 1983.) It noted that in practice the word "similar" was so narrowly construed that it prevented action against a physician unless a virtually identical error was made. "For example," the analysis stated, "if a surgeon is negligent in the handling of a gall bladder surgery, handles a postoperative infection inappropriately in another case and then does not operate in a timely manner on a third patient, these three negligent acts could not be acted on by [the Board] unless one or more constituted 'gross' negligence because they are not 'similar.' "

The Assembly Health Committee hearing notes for Senate Bill No. 109 show the following analysis: "Under existing law, the Board may take action against a physician and surgeon licensee who is guilty of repeated similar negligent acts. However, the requirement that the acts must represent a pattern of similar acts precludes taking any action against a licensee when only a single complaint about a particular type of act or omission is filed with the Board which . . . is justified. The Board is unable to act unless another justified complaint is filed within a five year period alleging negligence similar to the first complaint. [¶] In addition, these restrictions do not permit the Board to deal with a variety of negligent acts if each act was different from all the other acts . . . . [Previously,] 68% of the [Board's] investigations resulted in a finding that the physician's practice was deficient enough to keep the case open for five years, but was not a violation of the Medical Practice Act because it could not be demonstrated that a second complaint was received indicating that a particular type of act or omission was repeated." (Assem. Health Com. Rep. on Sen. Bill No. 109 (1983-1984 Reg. Sess.) as amended Apr. 12, 1983.)

The history of these amendments and the comments thereto supports a construction of the phrase "[r]epeated negligent acts" to mean two or more acts.

---

practice of medicine in another state or country without meeting that state or country's legal requirements for the practice of medicine.

## DISPOSITION

The appeal, treated as a petition for extraordinary relief, is denied.

Davis, J., and Kolkey, J., concurred.