[No. C057166. Third Dist. Oct. 27, 2009.]

HOLLYWOOD PARK LAND COMPANY, LLC, et al., Plaintiffs and Appellants, v.
GOLDEN STATE TRANSPORTATION FINANCING CORPORATION et al., Defendants and Appellants.

## COUNSEL

Howard Rice Nemerovski Canady Falk & Rabin, Steven L. Mayer and Amy E. Margolin for Plaintiffs and Appellants.

Mennemeier, Glassman & Stroud, Andrew W. Stroud, Kelcie M. Gosling and Stephen Lau for Defendants and Appellants Golden State Transportation Financing Corporation and California Infrastructure and Economic Development Bank.

Edmund G. Brown, Jr., Attorney General, Christopher E. Krueger, Assistant Attorney General, Constance L. LeLouis and Jennifer Rockwell, Deputy Attorneys General, for Defendants and Appellants California Infrastructure and Economic Development Bank.

## OPINION

**SCOTLAND, P. J.**—Amended Indian gaming compacts approved by the Governor authorize an increase in the number of permissible slot machines on Indian tribal land, in exchange for a substantial payment to the State of California (the State), and authorize the sale of bonds (compact bonds) to provide an income stream to the State in return for the State's promise to limit who may engage in certain types of gaming within the Indian tribes' core geographic market.

Defendants, California Infrastructure and Economic Development Bank (I-Bank) and Golden State Transportation Financing Corporation (Golden State), then initiated the sale of such bonds. However, plaintiffs, Hollywood Park Land Company, LLC, Terrence Fancher, MEC Land Holdings (California), Inc., Santa Anita Companies, Inc., Los Alamitos Race Course, and Bay Meadows Main Track Investors, LLC, filed a reverse validation action, raising three constitutional challenges to the compact bonds.

The trial court entered judgment in favor of defendants. Plaintiffs appeal, and defendants cross-appeal.

■ We shall dismiss the appeal and cross-appeal. As we will explain, Government Code section 63048.8, subdivision (e) states "the exclusive means to obtain review" of such a judgment "shall be by petition to the Supreme Court for writ of review." Although the statutory dictate for direct review to the Supreme Court is unconstitutional because it abridges the jurisdiction conferred on the Courts of Appeal by article VI, section 11, subdivision (a) of our state Constitution (*California Commerce Casino, Inc. v. Schwarzenegger* (2007) 146 Cal.App.4th 1406, 1417–1418 [53 Cal.Rptr.3d 626]), the statute can and must be reformed to provide that a petition for writ review in a Court of Appeal is the exclusive means to initiate appellate review of a trial court judgment in a reverse validation action concerning contracts and the issuance of bonds authorized by the amended Indian gaming compacts. Thus, we lack jurisdiction to address the issues raised in the purported appeal and cross-appeal.

We decline plaintiffs' request to treat the appeal as a petition for writ of review. Plaintiffs already obtained such review by filing a petition for writ of review in the California Supreme Court, which transferred it to this court. Our order summarily denying the petition was a determination on the merits that the reverse validation action was untimely.

## FACTUAL AND PROCEDURAL BACKGROUND

### A

In 1988, Congress enacted the Indian Gaming Regulatory Act (IGRA; 25 U.S.C. § 2701 et seq.), which provides a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments. (25 U.S.C. § 2701.) Under IGRA, gaming is separated into three categories. Each category is subject to a different mode of regulation. (25 U.S.C. § 2703(6)–(8).)

This appeal concerns class III gaming, which includes forms of gambling such as slot machines and blackjack. (25 U.S.C. § 2703(8).) To operate class III gaming, a tribe must enter into a compact with the state in which the tribal land is located. The compact must set forth the terms governing the conduct of the tribe's gaming activities, and the compact is subject to federal approval. (25 U.S.C. § 2710(d).)

In 1999, Governor Davis executed class III gaming compacts with 57 Indian tribes, allowing the operation of a maximum of 2,000 slot machines on tribal land. (Gov. Code, § 12012.25.) In March 2000, the voters approved Proposition 1A, which in effect ratified the compacts by amending the California Constitution to permit the operation of slot machines and certain card games pursuant to state-tribal compacts. (Cal. Const., art. IV, § 19, subd. (f).)

On June 21, 2004, Governor Schwarzenegger and five of the tribes agreed to amend their compacts to allow the tribes, upon the payment of substantial fee increases, to operate more than 2,000 slot machines. The five tribes are the Pala Band of Mission Indians, the Pauma Band of Luiseño Mission Indians, the Rumsey Band of Wintun Indians, the United Auburn Indian Community, and the Viejas Band of Kumeyaay Indians (collectively, the five tribes). (Gov. Code, § 12012.25.) Under section 4.4.3(a) of the amended compacts, the five tribes are required to pay the State, among other payments, $100 million per year for 18 years. As security for an 18-year revenue stream in the form of bonds that can be issued to investors, the State intended to assign to a third party the State's right to receive some or all of such payments (the compact assets).

Section 3.2(a) of the amended compacts provides that if the compact bonds are issued, then the State will not authorize slot machines or banking or percentage card games within the tribes' core geographic market, except to another tribe with a valid class III gaming compact. The amended compacts also provide that the five tribes can seek injunctive relief to enjoin the authorization of such gaming, so as to protect the marketability of the bonds and to provide the stability in gaming operations needed to ensure the tribes' annual payments. The tribes shall have the right to cease payments until the entity stops the prohibited gaming activities or reaches an agreement with the tribes to share revenue.

The Legislature ratified the amended compacts, including the provision authorizing the issuance of the compact bonds in accordance with the terms specified in the amended compacts. (Gov. Code, §§ 12012.40, 63048.65, 63048.8; Stats. 2004, ch. 91, § 3, eff. July 1, 2004; Assem. Bill No. 687 (2003–2004 Reg. Sess.) (hereafter Assembly Bill 687); further section references are to the Government Code unless otherwise specified.)

Assembly Bill 687 authorized a bank (defendant I-Bank), as an agent for the State, to sell specific portions of the compact assets—i.e., money required to be paid to the State—to a "special purpose trust" incorporated as a public benefit, not-for-profit organization. (§ 63048.65, subds. (a), (b).) The special purpose trust (defendant Golden State) is authorized to issue the compact bonds and "enter into agreements with any public or private entity and pledge the compact assets that it purchased as collateral and security for its bonds." (§ 63048.65, subd. (b).) Assembly Bill 687 also directs that the net proceeds from the sale of the compact assets be deposited in specified amounts into the Traffic Congestion Relief Fund and the Transportation Deferred Investment Fund in the State Treasury, which proceeds shall be applied as a credit to transfers from the General Fund that the Controller would otherwise be required to make to these traffic and transportation funds. (§ 63048.65, subd. (c)(1).)

Multiple lawsuits ensued after the Legislature's ratification of the amended compacts.

On September 15, 2004, Glendon B. Craig and several of the plaintiffs in this action (including Bay Meadows Main Track Investors, LLC, MEC Land Holdings (California), Inc., Santa Anita Companies, Inc., and Los Alamitos Race Course) filed, in the Alameda County Superior Court, a lawsuit against Governor Schwarzenegger, the Director of the Department of Finance, I-Bank, and Golden State (*Craig* or the *Craig* action). The following May, the *Craig* plaintiffs dismissed their action without prejudice, pursuant to a tolling agreement they reached with the defendants in that action. Under the agreement, the plaintiffs could file a new action asserting some or all of the claims made in *Craig*, which new action would be deemed filed on September 15, 2004, for statute of limitations purposes.

In May 2005, California Commerce Casino, Inc., and Michael Sana (collectively, California Commerce Casino) filed, in the Los Angeles County Superior Court, a lawsuit against Governor Schwarzenegger, the Director of the Department of Finance, I-Bank, and Golden State, challenging the statutes that ratified the amended compacts. The trial court sustained the defendants' demurrer on the ground that the action was time-barred. The plaintiffs then filed an appeal (*California Commerce Casino, Inc. v. Schwarzenegger, supra,* 146 Cal.App.4th 1406 (hereafter *Commerce Casino*)), the outcome of which we will discuss later in this opinion.

On November 15, 2005, in accordance with the authority of Assembly Bill 687, Golden State adopted a resolution authorizing the sale, issuance, and delivery of the compact bonds. Golden State's resolution authorized its corporate director to execute and deliver various documents (the compact

bond contracts), including a sale agreement between I-Bank and Golden State, and a "Master Indenture of Trust." The sale agreement and the Master Indenture of Trust provide that pursuant to the statutes enacted in accordance with Assembly Bill 687, the State pledges to the holder of the bonds that the State will not authorize anyone other than an Indian tribe with a federally authorized compact to engage in specific gaming activities within the defined core geographic market of an Indian tribe that is a party to an amended compact ratified by the Legislature.

B

On January 13, 2006, plaintiffs initiated the present reverse validation action. California Commerce Casino and the Gabrielino-Tongva Tribe submitted written responses as interested parties. (Code Civ. Proc., § 863.)

Thereafter, plaintiffs filed their first amended complaint with three causes of action against defendants.

The first cause of action challenges the compact bonds and compact bond contracts on the ground they unconstitutionally surrender the State's police power to regulate gaming because they contain promises that will not permit non-Indians to operate casinos within the core geographic markets of the five tribes while the compact bonds are outstanding, with the net effect of these unconstitutional conditions being to restrict the voters' ability to amend the Constitution to permit class III gaming at plaintiffs' racetracks.

The second cause of action contends the compact bonds and compact bond contracts are unconstitutional because the statute that led to their authorization was passed as an urgency statute in violation of article IV, section 8, subdivision (d) of the California Constitution, which precludes the use of an urgency statute to grant a special privilege or franchise.

The third cause of action alleges the disposition of the compact bond proceeds required by Assembly Bill 687 violates article XVI, section 1.3, subdivision (c)(2) of the California Constitution, which was added in 2004 by passage of Proposition 58. According to plaintiffs, the bond proceeds will impermissibly be used to fund year-end budget deficits and the debt obligations created by the bonds will be met with moneys derived solely from a designated source of revenue.

C

The procedures applicable to validation actions are set forth in Code of Civil Procedure sections 860 through 870 (the validating statutes). Code of

Civil Procedure section 860 states: "A public agency may upon the existence of any matter which under any other law is authorized to be determined pursuant to this chapter, and for 60 days thereafter, bring an action . . . to determine the validity of such matter. . . ." The statute does not specify the matters to which the validation procedure applies; rather, it states that the procedure applies only if it is authorized by another statute. For example, section 63048.8, subdivision (d), which pertains to actions challenging the tribal compact bond "securitization" process, states: "The special purpose trust and the bank shall be treated as public agencies for purposes of Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure, and any action or proceeding challenging the validity of any matter authorized by this article shall be brought in accordance with, and within the time specified in, that chapter." And section 17700, subdivision (a) provides: "(a) The state or any state board, department, agency, or authority, including, but not limited to, the State Public Works Board, may bring an action to determine the validity of its bonds, warrants, contracts, obligations, or evidences of indebtedness pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure."

Code of Civil Procedure section 864 states: "For purposes of this chapter, bonds, warrants, contracts, obligations, and evidences of indebtedness shall be deemed to be in existence upon their authorization. Bonds and warrants shall be deemed authorized as of the date of adoption by the governing body of the public agency of a resolution or ordinance authorizing their issuance, and contracts shall be deemed authorized as of the date of adoption by the governing body of the public agency of a resolution or ordinance approving the contract and authorizing its execution."

The validating statutes " 'contain a 60-day statute of limitations to further the important policy of speedy determination of the public agency's action.' [Citations.] 'The validating statutes should be construed so as to uphold their purpose, i.e., "the acting agency's need to settle promptly all questions about the validity of its action." ' [Citation.] [¶] If the public agency does not bring a validation action, 'any interested person may bring an action within the time and in the court specified by Section 860 to determine the validity of such matter.' ([Code Civ. Proc.,] § 863.) A validation action by an interested person is called a ' "reverse validation action." ' [Citation.] 'Under the statutory scheme, "an agency may indirectly but effectively 'validate' its action by doing nothing to validate it; unless an 'interested person' brings an action of his own under section 863 within the 60-day period, the agency's action will become immune from attack whether it is legally valid or not." ' [Citation.] '[A]s to matters which have been or which could have been adjudicated in a validation action, such matters . . . must be raised within the statutory limitations period in section 860 et seq. or they are waived.'

[Citations.]" (*McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1166 [71 Cal.Rptr.3d 109], italics omitted.)

## D

Defendants demurred to plaintiffs' first amended complaint on the ground that the entire action was time-barred because it was not filed within 60 days of the ratification of the amended compacts, which authorized the bonds in question. (§§ 17700, subd. (a), 63048.8, subd. (e); Code Civ. Proc., §§ 860, 864.) Defendants also demurred to the second cause of action on the ground that plaintiffs' challenge to the enactment of Assembly Bill 687 as urgency legislation was moot; even if a valid emergency did not exist, the only effect would be to delay the effective date of the statute from July 1, 2004, to January 1, 2005, which was prior to the actions taken by Golden State and I-Bank to issue and sell the compact bonds.

The trial court ruled that plaintiffs' three causes of action were not time-barred because (1) the pertinent date for measuring the statute of limitations was November 15, 2005, the date Golden State and I-Bank adopted resolutions authorizing the sale, execution, and delivery of the bonds, and (2) plaintiffs' reverse validation action was timely because it was filed within 60 days of that date, on January 13, 2006. However, the court granted defendants' demurrer to the second cause of action, which was based on mootness.

In October 2006, defendants served a motion for summary judgment or summary adjudication of issues with respect to the remaining causes of action. They argued that the State had not contracted away its police power as alleged in the first cause of action, and that the third cause of action failed because the bonds authorized by Assembly Bill 687 did not violate the constitutional prohibition against incurring indebtedness to finance "year-end budget deficits" (Cal. Const., art. XVI, § 1.3, subd. (c)(2)) and plaintiffs failed to join the five tribes as parties.

The trial court granted the motion for summary adjudication as to the third cause of action, but denied the motion as to the first cause of action concerning the State's police power.

## E

Thereafter, in *Commerce Casino, supra,* 146 Cal.App.4th 1406, the Court of Appeal upheld the Los Angeles County Superior Court's ruling that the action challenging the constitutionality of Assembly Bill 687 was time-barred

because it was not filed within 60 days of the Legislature's ratification of the amended compacts. (146 Cal.App.4th at p. 1410.)

Before reaching the merits of the action, the Court of Appeal addressed whether it had subject matter jurisdiction in light of section 63048.8, subdivision (e), which states in pertinent part: "Notwithstanding any other provision of law, the exclusive means to obtain review of a superior court judgment entered in an action brought pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure to determine the validity of any bonds to be issued, any other contracts to be entered into, or any other matters authorized by this article shall be by petition to the Supreme Court for writ of review. Any such petition shall be filed within 15 days following the notice of entry of the superior court judgment, and no extension of that period shall be allowed." (See *Commerce Casino, supra,* 146 Cal.App.4th at p. 1417.)

*Commerce Casino* concluded that the provision for direct review by the California Supreme Court was "patently unconstitutional" because it abridged the Court of Appeal's appellate jurisdiction. (*Commerce Casino, supra,* 146 Cal.App.4th at pp. 1417–1418.)[1] Thus, the Court of Appeal had subject matter jurisdiction to address the appeal.

*Commerce Casino* then turned to whether the appeal was timely, which depended on whether it was governed by the 30-day limitations period in the validation statutes (Code Civ. Proc., § 870, subd. (b))[2] or the typical 60-day period for filing a notice of appeal as provided for in the California Rules of Court. A resolution of this issue depended on whether the plaintiffs' challenge to Assembly Bill 687 was subject to the validation statutes, which rendered it necessary to address the principal issue on appeal—i.e., whether plaintiffs' challenge to Assembly Bill 687 was the equivalent of a challenge to the validity of the amended compacts, which had to be filed in the trial court within 60 days of the ratification of the amended compacts. (*Commerce Casino, supra,* 146 Cal.App.4th at pp. 1410, 1418–1419.)

---

[1] *Commerce Casino* observed our state Constitution provides that the California Supreme Court has jurisdiction only when a judgment of death has been pronounced, when it transfers a case to itself from the Court of Appeal, or when it reviews a decision of the Court of Appeal. (Cal. Const., art. VI, §§ 11, 12.) Except in those instances, the Courts of Appeal have appellate jurisdiction in circumstances where superior courts have original jurisdiction. (Cal. Const., art. VI, § 11, subd. (a).)

[2] Code of Civil Procedure section 870, subdivision (b) states in pertinent part: "Notwithstanding any other provision of law including, without limitation, Section 901 and any rule of court, no appeal shall be allowed from any judgment entered pursuant to this chapter [concerning validation and reverse validation proceedings] unless a notice of appeal is filed within 30 days after the notice of entry of the judgment, or, within 30 days after the entry of the judgment if there is no answering party. . . . "

*Commerce Casino* noted there are two statutes that potentially govern validation actions challenging the validity of the amended compacts or certain matters authorized by Assembly Bill 687, section 63048.8, subdivision (d) and section 17700. (*Commerce Casino, supra,* 146 Cal.App.4th at p. 1423.) The validation provision set forth in section 63048.8, subdivision (d) governs only challenges to the validity of matters authorized by title 6.7, division 1, chapter 2, article 6.5 of the Government Code (article 6.5), i.e., the "securitization" of the tribal compact assets (§§ 63048.6–63048.9), which did not encompass a challenge to the validity of the amended compacts. (146 Cal.App.4th at pp. 1423–1424, 1433.)

Not all contracts are subject to validation under section 17700 (*Commerce Casino, supra,* 146 Cal.App.4th at p. 1424), only "those that are in the nature of, or directly relate to the state or a state agency's bonds, warrants, or other evidences of indebtedness." (*Id.* at p. 1430.) In that case, the amended compacts met this requirement because they were "inextricably intertwined with the [S]tate's intended use of the income stream created by them and with the bonds to be issued at a later date. Therefore, the ability of the five tribes and the [S]tate to accomplish the statutory purpose of Assembly Bill 687 'would be substantially impaired absent a prompt validating procedure as to such contract[s].' [Citation.]" (*Ibid.*) *Commerce Casino* noted that "the application of the validation statutes is not contingent on whether the bonds are ultimately issued at the end of the process. The applicability of the validation statutes is determined at the beginning of the financing process when the contracts—in this case the amended compacts—required to implement that process are approved." (*Id.* at p. 1431.)

The plaintiffs alleged that Assembly Bill 687 was unconstitutional because it granted a franchise or special privilege by use of urgency legislation; it violated Proposition 58's prohibition on borrowing to fund year-end budget deficits; and it contracted away the State's police power to regulate gaming. (*Commerce Casino, supra,* 146 Cal.App.4th at pp. 1414–1415, 1431–1433.) All three of those theories were an implicit attack on the validity of the amended compacts, since invalidating Assembly Bill 687 on constitutional grounds would also invalidate the amended compacts. (146 Cal.App.4th at pp. 1431–1433.) The plaintiffs' Proposition 58 attack on Assembly Bill 687 was "an attack on the validity of the amended compacts because they are . . . 'inextricably bound up' with the use of the income stream created by the amended compacts and with the bonds to be issued." *Commerce Casino* "express[ed] no opinion as to any litigation involving the validity of any bonds issued pursuant to article 6.5, within section 4 of Assembly Bill 687." (146 Cal.App.4th at pp. 1432–1433.) It "simply h[e]ld plaintiffs' various

constitutional challenges to Assembly Bill 687 were also an attack on the validity of the amended compacts, and therefore said challenges should have been brought within 60 days of the effective date of said compacts." (*Id.* at p. 1433.)

Thus, the plaintiffs' complaint in *Commerce Casino* was untimely because it was filed more than 60 days after the Legislature had ratified the compacts on July 1, 2004 (*Commerce Casino, supra,* 146 Cal.App.4th at pp. 1423–1424, 1433), and the plaintiffs' notice of appeal was untimely since it was filed more than 30 days after notice of entry of judgment. (Code Civ. Proc., § 870.) Therefore, the appeal was dismissed. (*Commerce Casino, supra,* at pp. 1410–1411, 1419, 1434.)

F

After the opinion in *Commerce Casino* was filed, defendants moved for judgment on the pleadings as to the remaining first cause of action concerning the State's police power, contending it was time-barred under the rationale of *Commerce Casino*. Indeed, they argued that, even though the court had already resolved plaintiffs' other two causes of actions on different grounds, they were also time-barred because they were identical to causes of action that *Commerce Casino* found were time-barred. All of plaintiffs' challenges to the bonds were challenges to matters authorized by the amended compacts, and an invalidation of one would implicitly invalidate the other. Thus, plaintiffs should have brought the reverse validation action within 60 days of the Legislature's ratification of the amended compacts.

Plaintiffs opposed the motion on the ground that *Commerce Casino* did not apply because the court specifically declined to express an opinion as to the validity of any bonds issued pursuant to article 6.5 of Assembly Bill 687. The decision simply held that the various constitutional challenges to Assembly Bill 687 were equivalent to an attack on the validity of the amended compacts and, thus, the challenges were untimely because they were not brought within 60 days of the effective date of the compacts as required by section 17700. (*Commerce Casino, supra,* 146 Cal.App.4th at p. 1433.) In contrast, plaintiffs argued, they were not contesting the amended compacts; they were challenging the validity of the compact bonds and compact bond contracts. Code of Civil Procedure section 864 states that bonds and contracts are deemed authorized on the date the governing body of a public agency adopts a resolution authorizing their issuance or approving the contract. Section 63048.8, subdivision (d) states: "The special purpose trust [i.e., Golden State] and the bank [i.e., I-Bank] shall be treated as public agencies for purposes of [validation proceedings], and any action or proceeding

challenging the validity of any matter authorized by this article [i.e., article 6.5] shall be brought in accordance with, and within the time specified in, [the chapter governing validation proceedings]." Section 63048.65, which is in article 6.5, authorizes I-Bank and Golden State to take the necessary steps to issue the compact bonds and the compact bond contracts. On November 15, 2005, Golden State adopted a resolution authorizing the sale, issuance, and delivery of the compact bonds, and authorized its corporate director to execute and deliver the compact bond contracts (e.g., the sale agreement between I-Bank and Golden State, and the Master Indenture of Trust). Thus, according to plaintiffs, they had 60 days from this date to bring a reverse validation proceeding challenging these actions by these designated public agencies, and plaintiffs' action filed on January 13, 2006, was timely.

In addition, plaintiffs argued that, even if their complaint were construed as a reverse validation challenge to the amended compacts, their action was timely pursuant to the tolling agreement in the *Craig* action. Plaintiffs asserted the present action was simply a continuation of the *Craig* complaint filed on September 15, 2004, and because the amended compacts were not "in existence" until they were approved by the Secretary of the Interior on September 2, 2004, the complaint was filed well within the 60-day limit.

The trial court granted defendants' motion for judgment on the pleadings, ruling that the ˌcompact bonds' promises of gaming exclusivity, which plaintiffs contended unconstitutionally surrendered the State's police power, were basically the same as those contained in the amended compacts. As *Commerce Casino* observed, the amended compacts are inextricably intertwined with the State's intended use of the income stream created by the compacts and with the bonds to be issued at a later date. (*Commerce Casino, supra*, 146 Cal.App.4th at p. 1432.) A ruling that invalidated the promise in the bonds would implicitly invalidate the promise in the amended compacts, but this would impermissibly allow seriatim challenges to a unified method of financing, which would defeat the validating procedure's purpose of promptly settling all questions about the validity of a public entity's action. As such, the action was time-barred because it was not filed within 60 days of the ratification of the amended compacts on July 1, 2004. This was true whether the date of the present complaint or the date of the *Craig* complaint was used. The fact that the compacts had not been published in the Federal Register until September 2, 2004, did not alter this result because, for purposes of a validation proceeding, contracts are deemed to be in existence when the governing body of the public agency adopts a resolution or ordinance approving the contract and authorizing its execution, which meant the date the Legislature ratified the compacts was the relevant date.

G

Plaintiffs filed a notice of appeal on October 11, 2007, 13 days after notice of entry of the trial court's judgment of dismissal. The next day, plaintiffs also filed a petition for writ of review with the California Supreme Court, pursuant to the exclusive method of review provision of section 63048.8, subdivision (e), even though *Commerce Casino* held that this portion of the statute is unconstitutional. On December 20, 2007, the Supreme Court transferred the matter to this court. On January 17, 2008, this court summarily denied the writ petition based on *Commerce Casino*.

We now proceed to address plaintiffs' appeal.

DISCUSSION

I

Plaintiffs and defendants reiterate their positions concerning (1) the timeliness of plaintiffs' complaint; (2) whether the second cause of action is moot; and (3) whether the third cause of action violates Proposition 58. Defendants contend, as they did in the trial court, that all three of plaintiffs' causes of action are time-barred because they were not filed within 60 days of the ratification of the amended compact effective July 1, 2004. Plaintiffs insist that they are challenging the compact bonds and compact bond contracts and that, pursuant to section 63048.8, subdivision (d), the time for bringing a reverse validation action is measured from the date that Golden State and I-Bank authorized the sale of compact assets and the issuance of the bonds on November 15, 2005.

Plaintiffs' insistence that section 63048.8 governs creates a possible jurisdictional problem in light of their prior petition for writ of mandate pursuant to section 63048.8, subdivision (e). As we discussed earlier in this opinion, *Commerce Casino* held that section 63048.8, subdivision (e) is unconstitutional because it bypasses the Court of Appeal and mandates direct review by California's Supreme Court in the first instance. (*Commerce Casino, supra*, 146 Cal.App.4th at pp. 1417–1418.) But *Commerce Casino* did not consider whether the provision requiring direct review in the Supreme Court could, and should, be severed from the statute, leaving a petition for writ of review in the Court of Appeal as the exclusive means of obtaining review of a judgment in a reverse validation action concerning the compact bonds and compact bond contracts. (See, e.g., *Leone v. Medical Board* (2000) 22 Cal.4th 660, 668 [94 Cal.Rptr.2d 61, 995 P.2d 191] (hereafter *Leone*) [the Legislature generally has authority to enact laws specifying the mode of appellate review, e.g., by an extraordinary writ proceeding or direct appeal]; *Hotel Employees &*

*Restaurant Employees Internat. Union v. Davis* (1999) 21 Cal.4th 585, 613 [88 Cal.Rptr.2d 56, 981 P.2d 990] (hereafter *Hotel Employees*) [an unconstitutional statute is not inoperative to the extent that its invalid parts can be severed from any valid ones]; *Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 660–661 [47 Cal.Rptr.2d 108, 905 P.2d 1248] (lead opn. of Lucas, C. J.) [where a statute is not capable of being interpreted in a constitutional manner, a reviewing court may legitimately reform or rewrite it in order to preserve it against invalidation under the Constitution and to effectuate policy judgments clearly articulated by the Legislature, when invalidating the statute would be far more destructive of the Legislature's will]; accord, *People v. Sandoval* (2007) 41 Cal.4th 825, 844, fn. 7 [62 Cal.Rptr.3d 588, 161 P.3d 1146].)

While we agree that the provision for direct review before the Supreme Court is unconstitutional for the reasons stated in *Commerce Casino*, it does not necessarily follow that the remaining portion of the statute directing the exclusive means of review shall be by petition for writ of review is similarly infirm.

We gave the parties the opportunity to submit supplemental briefing on this issue, asking them to address (1) whether the statute could and should be reformed to excise the unconstitutional reference to direct review in the Supreme Court; and (2) if so, whether we lack jurisdiction to address the appeal (which would require dismissal of the appeal), or whether our summary denial of the writ petition was law of the case with respect to the contentions raised on appeal. (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126 [32 Cal.Rptr.2d 275, 876 P.2d 1074] [an appealable judgment is a jurisdictional prerequisite to an appeal, and a reviewing court must raise the issue of jurisdiction on its own initiative]; *Porter v. United Services Automobile Assn.* (2001) 90 Cal.App.4th 837, 839–840 [108 Cal.Rptr.2d 860] [subject to certain narrow constitutional limitations, there is no right to appeal; the right to appeal is wholly statutory].)

█ As we will explain, section 63048.8, subdivision (e) can and should be reformed to comport with the Legislature's intent to provide an expedient method of settling questions concerning the validity of the compact bonds and compact bond contracts. And because plaintiffs have already pursued their exclusive statutory remedy of a petition for writ of review, and this court summarily denied review on the merits, we lack jurisdiction to address their appeal and shall dismiss it. The dismissal renders it unnecessary to address plaintiffs' contention that our prior summary denial of their writ petition is not law of the case with respect to the contentions they raise on appeal.

## II

██ The appellate jurisdiction clause of California's Constitution states in part: "The Supreme Court has appellate jurisdiction when judgment of death has been pronounced. With that exception courts of appeal have appellate jurisdiction when superior courts have original jurisdiction . . . ." (Cal. Const., art. VI, § 11.) The clause does not grant litigants the right to bring a direct appeal; rather, it specifies the constitutional power of the courts. (*Leone, supra*, 22 Cal.4th at p. 665.) The "appellate jurisdiction" vested in the Courts of Appeal encompasses review by extraordinary writ as well as by direct appeal. (*Ibid.*)

The Legislature is permitted to enact laws specifying that an extraordinary writ petition shall be the exclusive method for obtaining review. (*Leone, supra*, 22 Cal.4th at p. 668.) Thus, the California Supreme Court has upheld statutes mandating that writ review be the exclusive method of review in certain actions. (*Leone, supra*, 22 Cal.4th at pp. 664, 670 [medical license revocation actions under Bus. & Prof. Code, § 2337]; *Powers v. City of Richmond* (1995) 10 Cal.4th 85, 90, 110 (plur. opn. of Kennard, J.), 115–116 (conc. opn. of George, J.) [40 Cal.Rptr.2d 839, 893 P.2d 1160] (hereafter *Powers*) [California Public Records Act actions (Gov. Code, §§ 6250, 6259)].)

However, the Legislature's authority to specify the mode of appellate review is not unqualified. (*Leone, supra*, 22 Cal.4th at p. 668.) "Because the appellate jurisdiction clause is a grant of judicial authority, the Legislature may not restrict appellate review in a manner that would ' "substantially impair the constitutional powers of the courts, or practically defeat their exercise." ' [Citation.] 'If it could be demonstrated in a given case, or class of cases, that, for whatever reason, the Courts of Appeal or [the Supreme Court] could not effectively exercise the constitutionally granted power of appellate review by an extraordinary writ proceeding, then such a proceeding could not constitutionally be made the exclusive mode of appellate review.' " (*Id.* at p. 668, italics omitted, quoting *Powers, supra*, 10 Cal.4th at p. 110.)

██ The fact that an appellate court may summarily deny a writ without issuing a written opinion does not mean that extraordinary writ review is an insufficient or ineffective appellate remedy. (*Leone, supra*, 22 Cal.4th at pp. 669–670.) Where a writ petition is the only authorized mode of appellate review, "an appellate court must judge the petition on its procedural and substantive merits, and a summary denial of the petition is necessarily on the merits. [Citations.] An appellate court that summarily denies a writ petition for lack of substantive merit or for procedural defect thereby fulfills its duty to exercise the appellate jurisdiction vested in it by the state Constitution's appellate jurisdiction clause." (*Id.* at p. 670.)

■    As noted by the California Supreme Court, "the appellate jurisdiction clause does not require the Legislature to provide for direct appeals in all cases within the original jurisdiction of the superior courts; . . . it permits some variation in and experimentation with the procedures for appellate review of civil actions brought in the superior courts, provided always that the constitutional powers of the courts are not thereby impaired . . . ." (*Leone, supra,* 22 Cal.4th at p. 670; see *Powers, supra,* 10 Cal.4th at p. 115.)

Here, as in *Powers* and *Leone,* there is "no reason to conclude that extraordinary writ review is not a sufficient or effective appellate remedy . . . ." (*Powers, supra,* 10 Cal.4th at p. 110; see *Leone, supra,* 22 Cal.4th at p. 668.) Validation actions are already subject to a shorter statute of limitations to further the important public policy of speedy determination of the public agency's action, and to settle promptly all questions about the validity of its action. (*McLeod v. Vista Unified School Dist., supra,* 158 Cal.App.4th at p. 1166.) The Legislature's decision to require extraordinary writ review in validation actions concerning the compact bonds is in furtherance of this policy. There is no evidence that it is designed to preclude review on the merits or to disadvantage litigants; rather, it is designed to speed the appellate review process, thereby making the appellate remedy more effective. (See Assem. Bill 687, §§ 1, 5 [declaring the urgent need to immediately implement the sale of the compact bonds]; cf. *Powers, supra,* 10 Cal.4th at pp. 112–113.)

Thus, there is no impediment to the Legislature's limiting appellate review of tribal compact bonds and compact bond contracts to review by extraordinary writ; the Legislature violated the constitutional provision governing appellate jurisdiction only when it mandated review in the California Supreme Court in the first instance.

The next question is whether we may reform section 63048.8, subdivision (e) by severing the unconstitutional portion dictating direct Supreme Court review, "and yet preserve the parts and applications of the section which do not violate the constitutional provision and which the Legislature would have intended to put into effect if it had foreseen the constitutional restriction." (*In re Edgar M.* (1975) 14 Cal.3d 727, 736 [122 Cal.Rptr. 574, 537 P.2d 406].)

■    "[A] statute that is invalid as inconsistent with the California Constitution is not ineffective and inoperative to the extent that its invalid parts can be severed from any valid ones." (*Hotel Employees, supra,* 21 Cal.4th at p. 613.) Indeed, invalid provisions of a statute should be severed whenever possible to preserve the validity of the remainder of the statute.

(*Raven v. Deukmejian* (1990) 52 Cal.3d 336, 355–356 [276 Cal.Rptr. 326, 801 P.2d 1077]; *In re Kapperman* (1974) 11 Cal.3d 542, 550 [114 Cal.Rptr. 97, 522 P.2d 657].) And "it is clear that severance of particular provisions is permissible despite the absence of a formal severance clause." (*Legislature v. Eu* (1991) 54 Cal.3d 492, 535 [286 Cal.Rptr. 283, 816 P.2d 1309]; see *City of Dublin v. County of Alameda* (1993) 14 Cal.App.4th 264, 275 [17 Cal.Rptr.2d 845].)

However, "[a]n invalid part can be severed if, and only if, it is 'grammatically, functionally and volitionally separable.' [Citation.] It is 'grammatically' separable if it is 'distinct' and 'separate' and, hence, 'can be removed as a whole without affecting the wording of any' of the measure's 'other provisions.' [Citation.] It is 'functionally' separable if it is not necessary to the measure's operation and purpose. [Citation.] And it is 'volitionally' separable if it was not of critical importance to the measure's enactment. [Citation.]" (*Hotel Employees, supra*, 21 Cal.4th at p. 613.)

The aforementioned conditions are satisfied here. Section 63048.8, subdivision (e) provides: "Notwithstanding any other provision of law, the exclusive means to obtain review of a superior court judgment entered in an action brought pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure to determine the validity of any bonds to be issued, any other contracts to be entered into, or any other matters authorized by this article shall be by petition *to the Supreme Court* for writ of review. Any such petition shall be filed within 15 days following the notice of entry of the superior court judgment, and no extension of that period shall be allowed. If no petition is filed within the time allowed for this purpose, *or the petition is denied, with or without opinion*, the decision of the superior court shall be final and enforceable as provided in subdivision (a) of Section 870 of the Code of Civil Procedure. In any case in which a petition has been filed within the time allowed, the *Supreme* Court shall make any orders as it may deem proper in the circumstances. If no answering party appeared in the superior court action, the only issues that may be raised in the petition are those related to the jurisdiction of the superior court. Nothing in this subdivision or subdivision (d) shall be construed as granting standing to challenge the designated tribal compacts." (Italics added.)

The italicized portions of the statute can be grammatically excised from section 63048.8, subdivision (e).[3] And severance of the italicized portions will not impair operation of the rest of the statutory scheme.

---

[3] Our request for supplemental briefing asked only whether section 63048.8, subdivision (e) can be reformed by removing the reference to the Supreme Court in the first sentence. Plaintiffs point out that such an omission would be inconsistent with other parts of subdivision (e) that would continue to refer to the Supreme Court, and would deny the court an opportunity to review the decision of a Court of Appeal. It was apparent, however, that we intended the

The Legislature made a petition for extraordinary writ the exclusive appellate remedy in order to expedite the review process. Its chosen forum for review was simply intended to further expedite the process by directing that the matter go directly to the Supreme Court rather than waiting for that court to determine whether to grant review following a decision by the Court of Appeal. Thus, we are confident that, if the Legislature had foreseen that direct writ review in the Supreme Court violated the Constitution, it nonetheless would have enacted the statute to provide that a petition for writ of review is the exclusive means of obtaining appellate review of a trial court judgment in a reverse validation action concerning contracts and the issuance of bonds authorized by the amended Indian gaming compacts. We reach this conclusion based on (1) the Legislature's declaration of urgent need to immediately implement the sale of the compact bonds (Stats. 2004, ch. 91, §§ 1, 5); (2) its declaration that the article be liberally construed to effectuate its intent (§ 63048.9); and (3) the shortened statutes of limitation for review in the superior court and Court of Appeal that generally are applicable to reverse validation actions because of the important public policy of promptly settling all questions about the validity of the public agency's action. (Code Civ. Proc., §§ 860, 870; *McLeod v. Vista Unified School Dist., supra,* 158 Cal.App.4th at p. 1166.)

Plaintiffs disagree that reformation is appropriate but their arguments, which we discuss in part III below, are not persuasive.

### III

Plaintiffs do not contend that the constitutional powers of the courts are impaired by the designation of a petition for writ of review as the exclusive method of review. And plaintiffs appear to concede the Legislature intended to facilitate the sale of the compact bonds by expediting appellate review in validation actions challenging the compact bonds. However, they argue we should not reform section 63048.8, subdivision (e) because it would not effectuate the Legislature's intent to expedite review under the unique circumstances of this case. Plaintiffs state: "Instead of resulting in a final judgment (as a decision on [the] merits of the appeal would), a decision to

---

parties to address whether the statute could be reformed to eliminate direct review in the Supreme Court, which implicitly involved reforming other parts of the statute that implicated Supreme Court review. In other words, can the portions of the statute that violate the California Constitution be excised within the rules guiding the reformation of statutes? Plaintiffs point out that the second and third portions of the statute highlighted above would also have to be reformed; otherwise, the statute would be inconsistent, and the Supreme Court would be deprived of the ability to review decisions of the Courts of Appeal. However, plaintiffs do not present any argument or authority demonstrating these portions cannot be deleted without violating the rules governing reformation.

reform that statute and dismiss the appeal would create a needless conflict with the decision invalidating the same statute and adjudicating the appeal in *Commerce Casino*. Supreme Court review would be necessary to resolve this jurisdictional issue, thus preventing any court from addressing the merits of this appeal for at least a year, and possibly more. Thus, reforming the statute would in all likelihood frustrate, rather than promote, the Legislature's goal of adjudicating challenges to the validity of the Compact Bonds expeditiously."

Plaintiffs' argument is not convincing. Our decision does not truly conflict with *California Commerce*, which decided that section 63048.8, subdivision (e) was unconstitutional because it impermissibly bypassed the Court of Appeal by mandating direct review in the Supreme Court. We agree with the analysis of *California Commerce* on this point. *California Commerce* did not address whether the statute could be reformed; thus, it is not authority for a proposition not considered by it. (*Gutierrez v. Employment Development Department* (1993) 14 Cal.App.4th 1791, 1797 [18 Cal.Rptr.2d 705].) Even assuming there is a conflict and the California Supreme Court granted review, this does not mean reformation of the statute would not effectuate the Legislature's intent to expedite the appellate process.

In deciding whether the reformation of a statute conforms with the Legislature's intent, we must look to its intent at the time the statute was enacted, and determine whether reformation would generally effectuate this intent. Unless this is the only time section 63048.8, subdivision (e) will ever be applied, the fact that a resolution of the present case may be delayed by reforming the statute is irrelevant to this analysis. Plaintiffs present no analysis demonstrating that this will be the only time that section 63048.8, subdivision (e) will have any application and that no further challenges to the "securitization" process in article 6.5 will ever be forthcoming. In fact, section 63048.65 indicates future compacts may be entered, future compact assets sold to the special purpose trust, and further bonds issued.

Plaintiffs also argue that a reformation of section 63048.8, subdivision (e) "leads to an insoluble conundrum." Plaintiffs contend that (1) if the statute can be reformed as our request for supplemental briefing suggested, then a petition for writ of review was plaintiffs' only remedy to secure appellate review of the trial court's judgment; however, (2) this court's summary denial of plaintiffs' petition for writ of review on the ground that the statute was unconstitutional, citing *Commerce Casino*, would prevent us from reaching a different conclusion in this appeal; thus, (3) our summary denial of the prior writ petition precludes reformation of the statute. Indeed, according to plaintiffs, reformation of the statute would deny plaintiffs any meaningful

review of their claims; this is so because when their writ petition was denied, section 63048.8 was unconstitutional; consequently, this court necessarily concluded they had an adequate remedy on appeal and, thus, did not give their claims the plenary review to which they were entitled.

Their argument is premised upon an unwarranted assumption about the basis for this court's denial of their writ petition. They assume that, by citing to *Commerce Casino*, we indicated that we agreed with the opinion's holding concerning the extent of the unconstitutionality of section 63048.8, subdivision (e), and that we denied the writ on the ground plaintiffs had an adequate remedy on appeal. Not so. Our citation to *Commerce Casino* actually reflected that we denied the writ petition on the merits based on the analysis in *Commerce Casino*. Plaintiffs, who originally filed their petition for writ of review in the California Supreme Court, asked the court (1) to hold section 63048.8, subdivision (e) was unconstitutional and to transfer the petition to us to adjudicate their challenges on the merits; (2) to transfer the matter to us for a decision on the merits; or (3) to transfer the petition to us with directions to consolidate it with their appeal, at which time we could address whether we had jurisdiction to decide the appeal. When it transferred the petition for review to us, the Supreme Court did not direct us to consolidate the writ petition with the appeal. We reviewed the merits of plaintiffs' contentions in their writ petition and summarily denied the petition because we were persuaded by *Commerce Casino*'s analysis on the merits.

Thus, to use plaintiffs' words, an "insoluble conundrum" exists, but it is not the one they suggest. If their complaint is construed as a reverse validation challenge to the bonds under section 63048.8, subdivision (d), then when we summarily denied their writ petition on the merits, they received the only appellate review to which they are entitled and we must dismiss the appeal. If their complaint is construed as a reverse validation action challenging the amended compacts under section 17700, then it is untimely for the reasons explained in *Commerce Casino* and we must affirm the trial court's judgment.

As *Commerce Casino* explained, the amended compacts are "inextricably intertwined with the [S]tate's intended use of the income stream created by them and with the bonds to be issued at a later date. Therefore, the ability of the five tribes and the [S]tate to accomplish the statutory purpose of Assembly Bill 687 'would be substantially impaired absent a prompt validating procedure as to such contract[s].' [Citation.]" (*Commerce Casino, supra,* 146 Cal.App.4th at p. 1430.) "[T]he application of the validation statutes is not contingent on whether the bonds are ultimately issued at the end of

the process. The applicability of the validation statutes is determined at the beginning of the financing process when the contracts—in this case the amended compacts—required to implement that process are approved." (*Id.* at p. 1431.)

The plaintiffs in *Commerce Casino* alleged that Assembly Bill 687 was unconstitutional because it was improperly adopted as an urgency measure; it violated Proposition 58's prohibition on borrowing to fund year-end budget deficits; and it contracted away the State's police power to regulate gaming. (*Commerce Casino, supra,* 146 Cal.App.4th at pp. 1414–1415, 1431–1433.) Although these theories were framed as a challenge to Assembly Bill 687, all three of the theories were an implicit attack on the validity of the amended compacts, because invalidating Assembly Bill 687 on constitutional grounds would also invalidate the amended compacts. (146 Cal.App.4th at pp. 1431–1433.) Accordingly, *Commerce Casino* held the plaintiffs' constitutional challenges to Assembly Bill 687 were also an attack on the validity of the amended compacts, which should have been brought within 60 days of the effective date of the amended compacts. (146 Cal.App.4th at pp. 1431–1433.)

Here, all of plaintiffs' causes of actions are virtually identical to the causes of action in *Commerce Casino*, i.e., the State's allegedly unconstitutional contracting away of its police power by limiting who may engage in class III gaming on tribal lands in conjunction with the issuance of the compact bonds; the alleged unconstitutionality of the Legislature's enactment of Assembly Bill 687 as an emergency measure; and the alleged violation of Proposition 58 by designating that the bond income be used to fund transportation needs. Under the reasoning of *California Commerce*, plaintiffs' complaint is untimely because it was filed more than 60 days after the amended statutes became effective on July 1, 2004.

Plaintiffs' reclassification of their claims as challenges to the compact bonds and the compact bond contracts is a transparent attempt at avoiding this dilemma. But it is a distinction without a difference in light of the nature of their challenges. It does not change the relevant date for determining when the statute of limitations began to run. Plaintiffs do not allege that the compact bonds are invalid because they are materially different than the bonds authorized by the amended compacts and Assembly Bill 687, or that Golden State and/or I-Bank violated relevant laws pertaining to the issuance of bonds.[4] Such claims would not be measured from July 1, 2004, but from

---

[4] Plaintiffs assert that some of the promises made to the bondholders are not identical to the promises made to the five tribes in the amended compacts. But plaintiffs do not provide any analysis showing these differences render their police power challenge to be materially different than the one raised in *California Commerce* such that their claims can be construed as

the date Golden State and I-Bank authorized the bonds and compact bond contracts. Rather, plaintiffs believe the compact bonds could not be issued as authorized by the amended compacts and Assembly Bill 687 because Assembly Bill 687 is unconstitutional for reasons specified in their complaint. However, the time to raise these concerns was within 60 days of the Legislature's ratification of the amended compacts.

The issuance of bonds and limitations on non-Indian gaming in the five tribes' core geographic markets, the intended use of the income stream, and the urgency of implementing the agreed-upon plan were all integral parts of the amended compacts and Assembly Bill 687, even if issuance of the bonds was contingent on a determination by the Director of the Department of Finance that the bonds could be issued successfully. It was clear from the compacts that it was "the State's intention to assign [the] tribes' revenue contributions . . . to a third party for purposes of securitizing the 18-year revenue stream in the form of bonds that can be issued to investors." (section 4.3.3(a) of the amended compacts.) Plaintiffs should not have allowed matters to proceed and waited until the bonds were issued to raise their constitutional challenges to the State's alleged abdication of its police powers, the urgency nature of Assembly Bill 687, and the intended use of the income stream derived from the bonds.

Plaintiffs' claim that the bonds are invalid because Assembly Bill 687 is unconstitutional would result in the indirect invalidation of the amended compacts. The limitation on who may participate in class III gaming within the five tribes' core geographic market (the true bone of contention for plaintiffs) is contained in the amended compacts and the compact bonds and compact bond contracts. Plaintiffs' police power, urgency legislation, and fund distribution challenges are designed to prevent this limitation from being enforced. The amended compact parties' contractual understanding regarding the bonds could never be effectuated despite the absence of a timely reverse validation challenge to the amended compacts. Thus, it would indirectly invalidate the promise in the amended compacts and impermissibly allow seriatim challenges to a unified method of financing, which in turn would defeat the validating procedure's purpose of promptly settling all questions about the validity of a public entity's action.

Relying on *Zabetian v. Medical Board* (2000) 80 Cal.App.4th 462 [94 Cal.Rptr.2d 917] (hereafter *Zabetian*), plaintiffs argue that if we reform the statute, we should treat their appeal as a petition for writ of review because,

---

challenges to the bonds rather than the State's agreement in the amended compacts to limit non-Indian gaming in the five tribes' core geographic markets if bonds were issued.

at the time they filed their appeal, *Commerce Casino* had determined section 63048.8, subdivision (e) was unconstitutional.

*Zabetian* involved a statute limiting the method of appellate review to a petition for extraordinary writ, which was declared unconstitutional by a Court of Appeal. Thus, the appellants in that case filed an appeal rather than a writ petition. Thereafter, the California Supreme Court declared the statute constitutional, which ruled out appeal as the appropriate method of review. *Zabetian* treated the appeal as a writ petition. (*Zabetian, supra*, 80 Cal.App.4th at pp. 465–466.)

Plaintiffs' contention would be more persuasive if they had not filed a petition for writ of review because they relied on *Commerce Casino*'s holding that section 63048.8, subdivision (e) was unconstitutional. But plaintiffs did file a writ petition in the California Supreme Court, demonstrating they recognized *Commerce Casino* might be wrong. As discussed previously, plaintiffs asked the Supreme Court (1) to hold that section 63048.8, subdivision (e) was unconstitutional and to transfer the petition to this court to adjudicate their challenges on the merits; (2) to transfer the matter to us for a decision on the merits; or (3) to transfer the petition to us with directions to consolidate it with plaintiffs' appeal, at which time we could address the constitutionality of the statute. However, the Supreme Court transferred the petition for review without addressing the statute's constitutionality or otherwise limiting our scope of review.

In their petition for review, plaintiffs raised similar arguments to those raised on appeal, and they argued *Commerce Casino* incorrectly decided the challenges to Assembly Bill 687 were time-barred. This court considered the parties' arguments and issued a summary denial of the petition on January 17, 2008, because the reverse validation action was untimely for reasons set forth in *Commerce Casino*. Plaintiffs pursued a petition for writ of review in addition to filing an appeal, and they fully briefed their arguments in the writ petition. Thus, they were not deprived of an appellate remedy, and we decline to treat their appeal as a request for writ review.

Because plaintiffs have already exhausted their sole method of review, we shall dismiss the appeal. Defendants have not offered any reason why their cross-appeal should not also be dismissed, so we will dismiss it as well.

## DISPOSITION

The appeal and the cross-appeal are dismissed. The parties shall bear their own costs on appeal.

Nicholson, J., and Hull, J., concurred.